Daniel R. Watkins (SBN 163571)
dw@wl-llp.com
WATKINS & LETOFSKY, LLP
2900 S. Harbor Blvd., Suite 240
Santa Ana, CA 92704
T: 949-476-9400

Kevin T. Snider (SBN 170988)
ksnider@pji.org
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827-6600
T: 916-857-6900

Attorneys for Plaintiffs, JASON BURCHAM, RODGE CAYETTE, MICHELLE LEMONS, MICHAEL PUNO, SUSANA REYNOSO, ANA FUENTES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BURCHAM, RODGE CAYETTE, MICHELLE LEMONS, MICHAEL PUNO, SUSANA REYNOSO, ANA FUENTES, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES; ERIC GARCETTI, Mayor of City of Los Angeles; MICHAEL MOORE, Chief of the Los Angeles Police Department; MATTHEW SZABO, Los Angeles City Administrative Officer; and DOES 1-50, inclusive; <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

1.     COMES NOW, Plaintiffs Jason Burcham, Rodge Cayette, Michelle Lemons, Michael Puno, Susana Reynoso, and Ana Fuentes (herein "Plaintiffs") employees of the City of Los Angeles seeking by this complaint for declaratory relief and injunctive relief, in the form of a

temporary restraining order, preliminary and permanent injunctions, barring Defendants, and all those in active concert, from abridging Plaintiff's constitutionally and statutorily protected rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, the California Constitution, the Supremacy Clause, Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983 and 1988 because the Defendants are violating Plaintiffs' civil rights; and 42 U.S.C. §2000e-5(f)(3), which confers original jurisdiction on federal district courts to address the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

3.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure 57 and 65.

4.      Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

5.      This Court has the authority to award Plaintiffs' attorneys' fees and costs associated with this action pursuant to 42 U.S.C. § 1988 and other applicable laws.

6.      Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred and are threated to occur in this jurisdictional district and division.

## PARTIES

**Plaintiffs**

7.      Plaintiff, Jason Burcham, is and was, at all times relevant to this action, a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los

Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Los Angeles County, California.

8.     Plaintiff, Rodge Cayette, is and was, at all times relevant to this action, a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Denton County, Texas.

9.     Plaintiff, Michelle Lemons, is and was, at all times relevant to this action, a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Los Angeles County, California.

10.     Plaintiff, Michael Puno, is and was, at all times relevant to this action, a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Los Angeles County, California.

11.     Plaintiff, Susana Reynoso, is and was, at all times relevant to this action, was a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Los Angeles County, California.

12.     Plaintiff, Ana Fuentes, is and was, at all times relevant to this action, a qualified/eligible "employee" of Defendant, City of Los Angeles working for the City of Los Angeles Police Department within the meaning of the California Fair Employment and Housing Act and Title VII of the Civil Rights Act, and residing in Los Angeles County, California.

13.     Plaintiffs include members who have experienced and recovered from COVID-19. Studies indicate that these Plaintiffs' natural antibodies and immunity are greater than their vaccinated peers.

14.     Plaintiffs also include individuals who could not assert a medical or religious exemption.

**Defendants**

15.     Defendant, City of Los Angeles (herein "City"), is a qualified/eligible "employer" within the meaning of the California Fair Employment and Housing Act and Title VII and conducting its operations in Los Angeles County. It employs each of the named Plaintiffs in the above-captioned action.

16.     Defendant, Eric Garcetti, is and was, at all times relevant to this action, Mayor of the City of Los Angeles who resides in the County of Los Angeles. He is being sued in his official capacity.

17.     Defendant, Michael Moore is and was, at all times relevant to this action, Chief of the Los Angeles Police Department who resides in the County of Los Angeles. He is being sued in his official capacity.

18.     Defendant, Matthew Szabo is and was, at all times relevant to this action, the City Administrative Officer who resides in the County of Los Angeles. He is being sued in his official capacity.

19.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner.  Plaintiffs will seek leave to amend this Complaint when the true names, capacities, participation, and responsibilities have been ascertained.

20.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, the Defendants named in this action, as well as the fictitiously named Defendants, and each of them, were agents and employees of the remaining Defendants, and in so doing the things

hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining Defendants.

## FACTS

**Scope of City of Los Angeles Mandate**

21.     On July 27, 2021, Mayor Eric Garcetti and City Council President Nury Martinez announced "that they would push for mandatory COVID-19 vaccines for City employees, beginning with a requirement that workers either submit proof of *vaccination or a weekly negative test*."[1]  (Emphasis added.)

22.     Mayor Garcetti stated further in his July 27, 2021, announcement, "This urgent need means that if you're a City employee, we're now going to require you to either show that you're vaccinated *or take a weekly test*, and we're committed to pursuing a full vaccine mandate. (Emphasis added.)

23.     According to Mayor Garcetti, "The new policy will require all department heads to verify and keep track of their employees' vaccination status and submit reports to the Personnel Department detailing that information. Each employee will be required to show proof of full vaccination to their department's HR representative. *In the absence of that proof, employees must produce proof of a negative COVID-19 test on a weekly basis*. Discussions are ongoing with the City's labor partners about the specific testing implementation plan."  (Emphasis added.)

24.     On August 20, 2021, Mayor of the City of Los Angeles, Eric Garcetti, signed and approved Ordinance No. 187134[2] (herein "Ordinance").

25.     The definition of "employees" in the Ordinance is exceedingly broad, encompassing not only full-time and part-time City employees, but also "volunteers, interns …

---

[1] A complete copy of the Mayor's statement dated July 27,2021 is located at Mayor Garcetti, Council President Martinez push toward mandatory vaccines for City employees | Office of Los Angeles Mayor Eric Garcetti (lamayor.org)

[2] A copy of the memorandum, Form Gen. 160A, regarding "MANDOATROY COVID-19 VACCINATION ORDINANCE", Report No. R21-0252 from the City Attorney, a report of the "OFFICIAL ACTION OF THE LOS ANGELES CITY COUNCIL", and Ordinance 187134 are attached as **Exhibit 1**.

appointed officers, board members and commissioners, 120-day retired employees, elected officials and at-will appointees of elected officials." *Sec. 4.700(b)*

26.     Among other things, the Ordinance mandates at Sec. 4.701(b) that "As of October 20, 2021, the COVID-19 vaccination and reporting requirements are conditions of City employment and a minimum requirement for all employees, unless approved for an exemption from the COVID-19 vaccination requirement as a reasonable accommodation for a medical condition or restriction or sincerely held religious beliefs. Any employee that has been approved for an exemption must still report their vaccination status."

27.     The Ordinance further mandates at Sec. 4.701(c) that "Requests for exemption from the COVID-19 vaccination must be submitted no later than September 7, 2021."

28.     Sec. 4702. allows "Qualified Exemptions" from the mandatory vaccination policy for "Employees with medical conditions/restrictions or sincerely held religious beliefs, practices, or observances that prevent them from receiving a COVID-19 vaccine." *Sec. 4702(a). Employees who qualify for "medical or religious exemptions and who are required to regularly report to a City worksite shall be subject to weekly COVID-19 tests." Sec. 4701(b).* (Emphasis added.)

29.     Sec. 4702 of the Ordinance goes on to state that "The City's goal is to have a vaccinated workforce. As such, employees will not have the option to "opt out" of getting vaccinated and become subject to weekly testing period only those within medical or religious exemption and who are required to regularly report to a work location are eligible for weekly testing period."  To this end, an employee cannot refuse medical treatment and keep his/her job, without obtaining a medical or religious exemption.  In addition, the Ordinance does not include an exemption for those with natural immunity to COVID-from previously contracting and fully recovering from COVID-19.

30.     The City's Ordinance mandating vaccination for its workforce, ignores peer-reviewed studies comparing naturally acquired and vaccine acquired immunity that show overwhelmingly that the former provides equivalent or greater protection against severe infection

than immunity generated by mRNA vaccines.  The City does not and cannot point to any evidence that vaccinated individuals have longer lasting or more complete immunity than those who have recovered from COVID.

31.    Early data also suggests that naturally acquired immunity may provide greater protection against both the Delta and Gamma variants than vaccine-induced immunity. A recent analysis of an outbreak among a small group of mine workers in French Guiana found that 60% of fully vaccinated miners suffered breakthrough infections compared to *zero* among those with natural immunity.[3]

32.    The CDC reported that "new scientific data" indicated that vaccinated people who experienced breakthrough infections carried similar viral loads to the unvaccinated (but not naturally immune), leading the CDC to infer that vaccinated people transmit the virus at concerning levels.[4]

33.    Around three-quarters of cases in a Cape Cod outbreak occurred in vaccinated individuals, again demonstrating that the vaccines are inferior to natural immunity when it comes to preventing infection.[5]

34.    As such, the City's refusal to allow an opt out, especially for employees with naturally acquired immunity, is not based only on conjecture.  In line with this unreasonable and arbitrary refusal, the City does not provide any process for employees to submit test results showing antibodies providing natural immunity to those who have recovered from COVID-19.

35.    In addition to the requirement of intrusive weekly testing mentioned above, the Ordinance presents other requirements including masks, physical distancing and COVID-19 Vaccine Training only for the employees who are unvaccinated, partially vaccinated, or have an

---

[3] Nicolas Vignier, et al., *Breakthrough Infections of SARS-CoV-2 Gamma Variant in Fully Vaccinated Gold Miners, French Guiana, 2021,* 27(10) EMERG. INFECT. DIS. (Oct. 2021), *available at* bit.ly/2Vmjx43 (last visited Aug. 3, 2021).
[4] See CDC reversal on indoor masking prompts experts to ask, "Where's the data?", WASHINGTON POST (July 28, 2021), available at wapo.st/2THpmIQ (last visited July 30, 2021).
[5] See Molly Walker, CDC Alarmed: 74% of Cases in Cape Cod Cluster Were Among the Vaxxed, MEDPAGE TODAY (July 30, 2021), available at bit.ly/2V6X3UP (last visited July 30, 2021).

unreported status for any reason at all.  This includes employees who received a qualified medical or religious exemption, and those with natural immunity to COVID-19 from previously being infected and fully recovering from COVID-19.  *Sec. 4703(b) and (c).*

36.     The Ordinance presents conflicting language regarding promotions, transfers, and appointments, at "Sec. 4.704. Limitations on Promotions, Transfers, and Appointments Sec. 4.704 (a) the Ordinance states, "All candidates and applicants seeking initial city employment, promotions, or transfers, including regular appointments, emergency appointments, temporary appointments, intermittent appointments, limited appointments, exempt full time and halftime and hiring hall employment, must meet the minimum qualification of being fully vaccinated or receive an exemption and report their vaccination status prior to the appointment, promotion, or transfer." However, Sec. 4.704(a)(2) states that "all employees whose vaccination status is on vaccinated, partially vaccinated, or unreported shall be ineligible to promote or transfer until the employee has reported to the appointing authority that they have been fully vaccinated."  Sec. 4704(a)(2) makes no exception for employees who have received a medical or religious exemption.

37.     The Ordinance states in blanket fashion that "Unvaccinated employees are at a greater risk of contracting and spreading COVID-19 with the workplace, and risk transmission to the public that depends on City services."  *Sec. 4705. Sec. 2.*  However, The City does not provide any evidence to support this premise, despite mounting data suggesting fully vaccinated individuals contract and transmit the COVID-19 Delta variant just like non-vaccinated individuals.

38.     In addition, the City does not consider in any regard the impact of natural immunity to COVID-19 developed from previously being infected and fully recovering from COVID-19 in protecting the peace, health and safety of the employee, fellow employees or the community.

39.     The ordinance further presumes that requiring vaccination of an individual that has already contracted and recovered from COVID-19 will not cause any short term or long term injuries. This presumption is based on absolutely no evidence and is purely conjecture.

40.     The City also fails to address the use of quarantine as an effective measure upon a positive COVID-19 test result to protect the peace, health and safety of the employee, fellow employees or the community.

41.     The Ordinance is also based on a misunderstanding by its enactors that an FDA-approved vaccine is currently available in the United States.

42.     All of the vaccines for COVID-19 currently being used in the United States remain under emergency-use authorization (herein "EUA").

43.     The only COVID-19 vaccine granted full approval by the FDA in August 2021, has not yet been administered in the United States and is still unavailable for the Los Angeles public employees now subject to the vaccination mandate.

44.     The City Council and Mayor arbitrarily and unreasonably passed the Ordinance mandating vaccination to address a faulty premise, and contrary to their admission that unvaccinated employees with exemptions can safely perform their job duties protecting themselves, fellow employees and the community they serve through non-pharmaceutical interventions such as daily health screenings, wearing masks, and quarantine.

**Implementation of the Ordinance**

45.     While Mayor Garcetti charged each department head with verifying and keeping track of their employees' vaccination status, the City failed to provide the department heads any guidance on how to implement the Ordinance, in particular the process for submitting, reviewing and determining requests for medical and religious accommodations.

46.     Despite the requirements of the Ordinance demanding submission of requests for medical or religious exemptions by September 7, 2021, and the protections afforded to employees under Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act, neither the City or the Police Department provided Plaintiffs or any of its employees a procedure or means to submit requests for medical or religious exemptions.  This failure continued

from August 20, 2021, the date of signing of the Ordinance, to September 7, 2021, the date by which all exemptions must have been submitted,

47.     During the implementation time, the City has relied on weekly testing and wearing masks for unvaccinated people as the primary means of protecting the peace, health and safety of the employee, fellow employees or the community.  The City presents no evidence that the peace, health and safety of City employees or the community in general has been compromised in any way by using non-pharmaceutical interventions prior to this mandate.

48.     Plaintiffs are informed and believe that from August 20, 2021, through September 7, 2021, Plaintiffs and hundreds of other employees within the Police Department, attempted to submit requests for medical or religious exemptions.  The Police Department refused to accept approximately half of the submissions and as of the filing of this action, the Police Department has not processed any the requests for exemption submitted by employees within the department.

49.     Plaintiffs are informed and believe that in addition to obstructing the process of submitting requests for medical or religious exemptions, several commanders and other leaders in the Police Department have engaged in hostile attacks on those seeking exemptions to vaccination for medical or religious reasons.  The hostile acts include but are not limited to:

a.     A mass email from the Chief Police Psychologist stating, among many other things, "If you have not vaccinated by now, it is because you have your reasons. You have thought about it a lot. It is OK to change your mind, if only because you want to protect others' safety or because you do not want to jeopardize your livelihood. Getting vaccinated now is an easy way to remove one major area of worry for your family, given all the dangers and uncertainty they know you regularly face."[6]

b.     A Captain, acting as the Chief's Duty Officer at the time, appeared at a rollcall and advised the employees present that the "City is willing to let go of the roughly 3,000 officers not vaccinated."

---

[6] A complete copy of the mass email from the Chief Police Psychologist is attached as **Exhibit 2**.

c.      Multiple commanding officers (usually in charge of roughly 300 employees) sending emails that threaten "swift actions" against those that do not vaccinate.

d.      An email from a Commanding Officer sent on August 30, 2021 noted that "one of the head doctors from the City advised that medical exemptions will be difficult to obtain based upon the science."

e.      On August 31, 2021, two supervisors threatened their employees with no promotion and/or transfer out of their special assignments for non-compliance of vaccination.

f.      On September 1, 2021, a commanding officer sent an email to his supervisors berating unvaccinated employees for their lack of "sympathy and caring" related to coronavirus issues.

g.      On September 1, 2021, an employee was advised that their request was "disposed of" based upon a Department Operations Center notice.

h.      On September 2, 2021, another Captain sent communication to employees advising that Medical Liaison Section (the entity designated by the Department as responsible for collecting employees' vaccination status and coordinating all COVID-19 related issues) is not accepting the employees' requests for exemption of any type and they "WILL NOT BE RESPONSIBLE for an officer saying he/she turned in" the request.

i.      Several commanding officers have claimed that employees are "unfit" for duty without vaccinations, and one commander asserted that employees that are not vaccinated were "unfit to wear the uniform."

50.      On Friday, September 10, 2021, the City issued a statement indicating that employees could submit their requests for exemption through an online portal. The policy requires employees to submit their requests no later than close of business Monday, September 13, 2021.[7]

---

[7] A copy of the complete communication is attached as **Exhibit 3**.

51.     The City's plan to stop accepting requests for medical and religious exemptions after a short 72-hour window, over a weekend, to file such exemptions, clearly violates and interferes with the employees' rights to request accommodation for medical or religious reasons. The intentional closure of the time to submit a request for accommodation reveals the City's intent to interfere with the employees' rights and to not engage in the interactive process for these requests for accommodation, also a violation of the employees' civil rights.

**COUNT I**
**VIOLATION OF UNITED STATES CONSTITUTION –**
**FOURTH AND FOURTEENTH AMENDMENTS**
**Right to Privacy**
**42 U.S.C. § 1983**
**(Against All Defendants)**

52.     Each of the preceding paragraphs is hereby incorporated and realleged as though fully set forth herein.

53.     Each of the named Defendants is charged with the implementation and enforcement of the Ordinance.  Their current and prospective conduct in such implementation and enforcement is done under color of law.

54.     The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

55.     The Fourth Amendment has been made applicable to the states and their political subdivisions through the Fourteenth Amendment.

56.     Congress has authorized suits to enforce federal constitutional rights by way of 42 U.S.C. Section 1983.

57.     The United States Supreme Court has explained that invasive medical testing, injections, and other bodily intrusions constitute a search within the meaning of the Fourth

Amendment.   The Constitution protects a person's right to refuse unwanted medical care.  This right is so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment.

58.   Americans do not surrender their constitutional rights, including their Fourth Amendment rights, when they become public officials, appointees, or employees.

59.   The City enacted the Ordinance with the stated purpose "to require COVID-19 vaccination for all current and future City employees."

60.   Defendants have no reasonable basis for believing that all or even most of the individuals it is ordering to be vaccinated or subjected to testing pose any greater threat to public safety than members of the general population, or than the other City employees who are vaccinated.

61.   The highly intrusive, forced injection of a COVID-19 vaccine into Plaintiffs against their will is anathema to the Fourth Amendment and to the Plaintiffs.

62.   The Ordinance mandates vaccines that continue to be experimental and unapproved.

63.   Vaccines have never previously been required for Plaintiffs' job classifications.

64.   Plaintiffs have never before been subjected to highly intrusive, weekly medical testing as part of their job classifications or positions.

65.   Plaintiffs therefore have a longstanding, reasonable expectation that their public employment and positions will not be conditioned on either vaccination or repeated, intrusive medical testing.

66.   The order specifies that failure to comply with this mandate will render the City employees ineligible for promotion or transfer, including Plaintiffs.  In other words, the Ordinance conditions their full participation in public employment on the relinquishment of their Fourth Amendment rights.

67.    The City's mandate does not provide an "opt-out" for any employee, including those with natural immunity as a result of contracting and fully recovering from COVID-19.

68.    The Ordinance offers limited medical and religious exemption options but penalizes those seeking such exemptions by requiring invasive testing for COVID-19.

69.    Even were Plaintiffs able to avail themselves of these so-called exemptions, the only alternative presented by the City, weekly or ad hoc testing, is equally onerous, intrusive, and violative of Plaintiffs' privacy rights, particularly when daily health screening is available as an effective method to determine whether an individual has contracted COVID-19.

70.    Plaintiffs face imminent loss of their public positions unless they give up their Constitutionally protected rights.

71.    Plaintiffs are entitled to a declaration that the Ordinance violates the Fourth and Fourteenth Amendments.

72.    Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the ordinance against them.

73.    Plaintiffs are entitled to nominal damages for the threatened invasion of their privacy rights accomplished by enactment of the Ordinance.

74.    Plaintiffs are entitled to compensatory damages in an amount according to proof.

75.    Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

76.    Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

**COUNT II**
**VIOLATION OF CALIFORNIA CONSTITUTION –**
**ARTICLE I, SECTION 1**
**Right to Privacy**
**(Against All Defendants)**

77.    The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

78.     Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness and privacy."

79.     This provision is self-executing.

80.     The California Supreme Court has interpreted Article I, Section 1 to protect Californians from information amassing practices by both government and non-governmental entities.

81.     Article I, Section 1 protects Californians from the unnecessary and overbroad collection, retention and stockpiling of their sensitive personal information by both governmental and non-governmental entities.

82.     The internal medical condition of one's body, including vaccination status, is highly personal and confidential, and therefore a protected privacy interest well within the ambit of Article I, Section 1.

83.     Absent a strong showing of need, such as safe operation of dangerous equipment or safe and fair participation in athletic competitions, employers may not demand that employees disclose internal bodily conditions.

84.     Employees such as Plaintiffs have a reasonable expectation of privacy that their vaccination status will not be demanded, collected or recorded by their employer, nor will it be disclosed to the government without their consent.

85.     By the Ordinance, the City has directed department heads to ascertain, collect and record the vaccination status of both employees, including Plaintiffs.

86.     The City's Ordinance constitutes a massive, overbroad and unwarranted intrusion into the confidential medical conditions of Plaintiffs and thousands of employees for the City.

87.     Subjecting City employees to a new condition of employment—which neither they nor Plaintiffs contemplated when they were hired—forces them to choose between their livelihood,

in a time of acute nationwide economic hardship, and preservation of their fundamental constitutional privacy rights to control self-disclosure of sensitive personal information.

88.     The order further seeks to embarrass, humiliate, shame and deprive the liberty of persons who decline to state their vaccine status by requiring Plaintiff to treat them as unvaccinated and impose testing, masking, and other punitive measures such as denial of promotions, transfer, appointments, etc.

89.      The City's mandate impinges on the Plaintiffs' rights of privacy, association and expression and it constitutes a serious invasion of both the informational and autonomy privacy aspects of Article I, Section 1.

90.     The City Ordinance's effect on privacy, association and expression are even more egregious than the effect on privacy alone and therefore, require the City to identify a compelling interest achieved by the least restrictive means to justify its mandate and restrictions.

91.     Defendants have not shown, nor can they show, a compelling, substantial or even legitimate need for ordering all department heads to collect and record sensitive vaccination status of their employees.

92.     Plaintiffs are entitled to a declaration that the City's Ordinance violates the right to privacy enshrined in Article I, Section 1 of the California Constitution.

93.     Plaintiffs are further entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Ordinance.

94.     Plaintiffs are entitled to nominal damages for the invasion of their privacy rights.

95.     Plaintiffs are entitled to compensatory damages in an amount according to proof.

96.     Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

97.     Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

///

///

**COUNT III**
**VIOLATION OF UNITED STATES CONSTITUTION –**
**FOURTEENTH AMENDMENT**
**Right to Due Process**
**42 U.S.C. § 1983**
**(Against All Defendants)**

98.     The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

99.     Each of the named Defendants is charged with the implementation and enforcement of the Ordinance.  Their current and prospective conduct in such implementation and enforcement is done under color of law.

100.     The Due Process Clause of the Fourteenth Amendment provides: "nor shall any state deprive any person of life, liberty, or property, without due process of law ... ." U.S. Const., amend. XIV, sec. 1.

101.     Plaintiffs have fundamental Constitutional rights to bodily integrity, including, especially, to be free from unconsented to or coerced medical treatment.

102.     Defendants are state actors and have instituted or imminently intend to institute the COVID-19 vaccine mandate under color of law.

103.     Unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.   An overarching principle, known as the unconstitutional conditions doctrine ... vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.

104.     Unconstitutional conditions case law often references the existence of varying degrees of coercion. Accordingly, Defendants cannot impair Plaintiffs right to refuse medical care through subtle forms of coercion any more than it could through an explicit mandate.

105.     For Plaintiffs to prevail, unconstitutional conditions claims do not need to establish that a challenged government policy amounts to coercion. Instead, it is sufficient that the

Ordinance burdens a constitutional right by imposing undue pressure on an otherwise voluntary choice with a nexus to the exercise of a constitutional right. This is especially true when a government actor couples an unconstitutional condition with a procedural system stacked against the right-holder.

106.    Plaintiffs possesses both a liberty interest in their bodily integrity and the property interests associated with their employment by the City.

107.    This real controversy exists between Plaintiffs and Defendants, in that Defendants contend that they have the right, the power, and the authority to require Plaintiffs' coerced vaccination as a condition of employment, and Plaintiffs maintain that such coercion is a form of duress, because they have the fundamental constitutional and statutory right to refuse vaccination without disruption of their livelihoods.

108.    The Ordinance presumes without any evidence that employees with natural immunity to COVID-19 present a risk to themselves, their fellow employees and the community in general.  Relying on this presumption, Defendants fail to provide any process for an employee to opt out of the mandatory vaccination because of natural immunity to COVID-19, and still preserve their rights to bodily integrity and the property interests associated with their employment by the City.

109.    The ordinance also presumes without any evidence that daily health screenings and quarantine upon positive test results is any less effective in protecting the peace, health and safety of the employees, and the community, than highly intrusive testing methods, mask wearing, or participating in vaccine education classes.  Daily screening can be accomplished the same way it has been for other viruses and the way it was before the vaccines were available.

110.    Plaintiffs are entitled to a declaration that the Ordinance violates the Due Process Clause of the Fourteenth Amendment.

111.    Plaintiffs are further entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Ordinance.

112.    Plaintiffs are entitled to compensatory damages in an amount according to proof.

113.    Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

114.    Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

**COUNT IV**
**VIOLATION OF DUE PROCESS**
**42 U.S.C. § 1983**
**(Against All Defendants)**

115.    The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein.

116.    Each of the named Defendants is charged with the implementation and enforcement of the Ordinance.  Their current and prospective conduct in such implementation and enforcement is done under color of law.

117.    The United States Constitution and federal laws are the "Supreme Law of the Land" and supersede the constitutions and laws of any state.

118.    State law is pre-empted to the extent that it actually conflicts with federal law.

119.    Federal law need not contain an express statement of intent to preempt state law for a court to find any conflicting state action invalid under the Supremacy Clause.  Rather, federal law preempts any state law that creates an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

120.    The Emergency Use Authorization (herein "EUA") statute mandates informed and voluntary consent. See 21 U.S.C. § 360bbb-3(e)(1)(A)(ii).

121.    The EUA statute expressly states that recipients of products approved for use under it be informed of the "option to accept or refuse administration," and of the "significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown."

122.    Defendants' coercion of Plaintiffs by making enjoyment of their constitutionally and statutorily protected consent rights contingent upon receiving an experimental vaccine, cannot be reconciled with the letter or spirit of the EUA statute.

123.    The conflict between the Ordinance and the EUA statute is particularly stark given that the statute's informed consent language requires that recipients be given the "option to refuse" the EUA product. That is at odds with the Ordinance's forcing Plaintiffs and all City employees to sustain significant injury to their career if they do not want to take the vaccine.

124.    The plain language states that the recipient of an EUA vaccine must be informed "of the option to accept or refuse the product." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii). Especially when read against the backdrop of what the Constitution requires and against the common law rules from which the constitutional protections for informed consent arose, Congress's intent to protect informed consent is clear.

125.    By superseding 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), the Ordinance deprives the Plaintiffs of the due process of the law guaranteed to them as citizens under the Fourteenth Amendment.

126.    The Ordinance is invalid pursuant to Article VI, Cl. 2 of the United States Constitution, and must be enjoined and set aside.

127.    Plaintiffs are entitled to a declaration that the Ordinance violates the Supremacy Clause of the Fourteenth Amendment.

128.    Plaintiffs are further entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Ordinance.

129.    Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

130.    Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

///

///

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF**

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**AND THE FAIR EMPLOYMENT AND HOUSING ACT**
**42 U.S.C. §2000e et seq. and California Government Code §12900 et seq.**
**(Against All Defendants)**

131.    The preceding paragraphs are hereby incorporated and realleged as though fully set forth herein. U.S.C. §2000e et seq. and California Government Code §12900 et seq., both Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act (FEHA) provide broad workplace protections for people of sincere religious faith. For instance, it is generally unlawful for an employer to "exclude or to suspend an employee, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(c)(1). (See also Government Code §12940(b)).

132.    Within this framework, both Title VII and the FEHA require an employer to reasonably accommodate an employee's sincere religious observances and practices, unless such an accommodation would impose an undue hardship.

133.    Pursuant to 42 U.S.C. §2000e (j), "religion" in the employment context is defined as "all aspects of religious observance and practice, as well as belief…" A similar definition may be found under California Government Code §12940(l) and 2 Cal. Code Reg. §7293.1. In view of this broad definition by Congress and the California Legislature, it cannot be said that any employer covered by Title VII or the FEHA may legally or constitutionally require an employee to belong to any "bona-fide" religious organization as a condition for receiving an accommodation.

134.    Implicit in both TITLE VII and FEHA, is the Plaintiffs and other City employees' right to request religious or medical accommodations, as needed. Given that the employer is required to evaluate the request and determine through the interactive process whether reasonable accommodations can occur, the employee must be provided a reasonable opportunity to submit such requests.

135.    Initially, Defendants failed provide any process for Plaintiffs or other City employees to submit a request for medical or religious accommodation. Defendants went so far as

to obstruct the Plaintiffs and other City employees to submit their requests.  In particular, the hostile work environment present at the Police Department, as described above, is obstructing and interfering with the employees and Plaintiffs' right to request a religious accommodation.

136.    Plaintiffs request declaratory judgment against the Defendants requiring them to develop a process for accepting exemptions beyond the September 13, 2021 deadline.  The current policy allows employees 72 hours approximately to submit these requests. Limiting the timeframe in which an employee can submit a request to 3 days, , two of which occurred over the weekend, is a direct attack in violation of those rights preserved for employees under Title VII and FEHA. At the very least, the time period to request exemptions should run through October 19, 2021.

137.    Plaintiffs are entitled to a declaration that the process to submit requests for medical or religious exemptions is not reasonable and is in violation of Title VII and FEHA.  Without a reasonable procedure in place, Plaintiffs are unable to submit meaningful and timely requests for religious accommodation thereby depriving them of an opportunity to exercise their rights under Title VII and FEHA.  Such prevents them from qualifying for the filing of a federal or state complaint with the administrative agencies charged with investigation and enforcement.  Thus, Plaintiffs would not be able to receive a right to sue letter from these agencies.

138.    Plaintiffs are further entitled to preliminary and permanent injunctive relief requiring the city and defendants to implement a reasonable process for plaintiffs and employees to submit their requests for exemption to include a defined process and a reasonable time to submit requests.

139.    Plaintiffs are further entitled to preliminary and permanent injunctive relief requiring defendants to accept all requests for religious and medical exemptions, and to not destroy any requests that are presented to the city or the department heads.

140.    Plaintiffs are further entitled to preliminary and permanent injunctive relief requiring the City and department heads ensure that all harassment and discrimination against Plaintiffs and other employees who remain unvaccinated, for whatever reason.

141.    Plaintiffs are entitled to compensatory damages in an amount according to proof.

142.    Plaintiffs are entitled to their reasonable costs of suit and attorneys' fees.

143.    Plaintiffs are entitled to such other and further relief as the Court may deem appropriate.

### REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial on factual matters.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs moves the Court for:

1.      A declaration the Ordinance violates the Fourth and Fourteenth Amendments.

2.      A declaration the City's Ordinance violates the right to privacy enshrined in Article I, Section 1 of the California Constitution.

3.      A declaration the Ordinance violates the Due Process Clause of the Fourteenth Amendment.

4.      A declaration that the process to submit requests for medical or religious exemptions, outlined in Exhibit 3, is not reasonable and is in violation of Title VII and FEHA.

5.      A preliminary and permanent injunction prohibiting Defendants from enforcing the Ordinance.

6.      A preliminary and permanent injunction requiring the City and Defendants to implement a reasonable process for Plaintiffs and employees to submit their requests for exemption to include a defined process and a reasonable time to submit requests for religious and medical exemptions.

7.      A preliminary and permanent injunction requiring Defendants to accept all requests for religious and medical exemptions, and to not destroy any requests that are presented to the City or its departments.

8.      A preliminary and permanent injunction requiring the City and department heads to prevent all harassment and discrimination against Plaintiffs and other employees who remain unvaccinated, for whatever reason.

9.      Plaintiffs request nominal damages for the threatened invasion of their privacy rights accomplished by enactment of the Ordinance.

10.    Plaintiffs request compensatory damages in an amount according to proof.

11.    Plaintiffs request reasonable costs of suit and attorneys' fees.

12.    Plaintiffs request such other and further relief as the Court may deem appropriate.

DATED this 11th day of September 2021                   WATKINS & LETOFSKY, LLP

                                                                            */s/  Daniel R. Watkins*
                                                                  By:_____
                                                                        Daniel R. Watkins
                                                                        2900 S. Harbor Blvd., Suite 240
                                                                        Santa Ana, CA 92704
                                                                        Attorneys for Plaintiffs