MICHAEL N. FEUER, City Attorney
VIVIENNE A. SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS**, Deputy City Attorney (SBN 210908)
**JENNIFER GREGG**, Deputy City Attorney (SBN 193037)
**TRAVIS T. HALL**, Deputy City Attorney (SBN 301755)
200 North Main Street, 800 City Hall East
Los Angeles, California 90012-4131
Telephone:  (213) 978-7156 / (213) 978-7153 / (213) 978-7151
E-mail: *erika.Johnsonbrooks@lacity.org; jennifer.gregg@lacity.org; travis.t.hall@lacity.org*
Attorneys for Defendants CITY OF LOS ANGELES,
ERIC GARCETTI and MICHEL MOORE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LEMONS, RODGINALD CAYETTE, MICHAEL PUNO, SUSANA REYNOSO, ANA FUENTES, MICHAEL PARKS, EVLIN AKSERELIAN, MATTHEW GONZALEZ, PATRICIA GONZALEZ, LAURISSA PROVOST, SUSAN GARCIA, CHRISTOPHER SILVA, GEORGINA GRIEGO<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, Mayor of City of Los Angeles; MICHAEL MOORE, Chief of the Los Angeles Police Department; MATTHEW SZABO, Los Angeles City Administrative Officer, and DOES 1-50, Inclusive;<br><br>　　　　　　Defendants. | **CASE NO. 2:21-cv-07296-RGK-JPR**<br><br>Honorable R. Gary Klausner<br>United States District Judge<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY MOTION FOR PRELIMINARY INJUNCTION SHOULD NOT ISSUE RE CITY OF LOS ANGELES EXEMPTION REQUEST PROCEDURES** |

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ...................................................................1

II.   STATEMENT OF FACTS ...............................................4

III.  LEGAL STANDARD ....................................................7

IV.  ARGUMENT ...............................................................8

A. Plaintiff Cannot Show a Likelihood of Success on The Merits ................8

   1. Plaintiffs Cannot Plead a *Prima Facie* Case of Religious Discrimination ...................................................10

      a.   The City Has an Affirmative Obligation to Offer a Religious Exemption to the Vaccine Mandate .............................12

      b.   The City's Religious Exemption Process Seeks Permissible Information to Assist in Review of Exemption Requests...........13

          (i) Religious Belief is Broadly Defined, But Does Not Include Mere Passion, Politics or Personal Preference.....................13

          (ii) An Employer May Examine the Sincerity of a Religious Belief and the City Forms are Designed for that Purpose ....14

          (iii) City Forms Seek Information Sufficient to Consider Religious Exemptions in Light of the High Volume of Requests...................................................16

   2. Plaintiffs Cannot Establish Medical Disability Discrimination..........16

   3. Plaintiffs Lack Standing for Their Title VII and FEHA Claims.........17

B.  Plaintiffs Have Not Demonstrated Irreparable Harm if the City Continues to Utilize its Exemption Procedures.......................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS (Cont'd)</u>**

<u>**PAGE**</u>

C. The Remaining *Winter* Factors, the Balance of Equities and the Public Interest, Tip Heavily in Favor of the Public Interest...................19

V.   CONCLUSION...............................................................................20

# TABLE OF AUTHORITIES

## CASES                                                                    PAGE

*Alliance for Wild Rockies v. Cottrell*
  632 F.3d 1127, 1135 (9th Cir. 2011) ........................................................18

*America's Frontline Doctors v. Wilcox*
  No. EDCV 21-1243 JGB (KKx), 2021 U.S. Dist. LEXIS 144477, at *17, 24-25
  (C.D. Cal. July 30, 2021) ...................................................................3, 4

*Ansonia Board of Education v. Philbrook*
  479 U.S. 60 (1986)............................................................................15

*Beckerich v. St. Elizabeth Medical Center*
  No. 21-105-DLB-EBA 2021 U.S. Dist. LEXIS 183757 at *14 (E.D. Ky.
  Sep. 24, 2021......................................................................................11, 17

*Bridges v. Houston Methodist Hospital*
  H-21-1774, 2021 WL 2399994, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex.
  June 12, 2021)....................................................................................3

*Brown v. Polk County*
  61 F.3d 650 (8th Cir. 1995) ...............................................................12

*Brown v. Smith*
  24 Cal.App.5th 1135 (2018) ..............................................................2

*Calfornia v. Azar*
  911 F.3d 558 ......................................................................................8

*Chalmers v. Tulon Co. of Richmond*
  (4th Cir. 1996) 101 F.3d 1012 ...........................................................12

*Children's Health Def., Inc.*
  2021 U.S. Dist. LEXIS 184242 at *19-21 .........................................2, 4

*Chrysler Corporation v. Mann*
  561 F.2d 1282 (8th Cir. 1977) ...........................................................15

## TABLE OF AUTHORITIES (Cont'd)

**CASES (Cont'd)**                                                    **PAGE**

*Dixon v. Hallmark Cos.*
    (11th Cir. 2010) 627 F.3d 849 ................................................. 12

*Edge v. City of Everett*
    929 F.3d 657 ................................................................................ 8

*Fallon v. Mercy Catholic Medical Center of Southeast Penmsylvania*
    877 F.3d 487 (3rd Cir. 2017) ................................................. 13

*French v. Davidson*
    143 Cal.658 (1904) .................................................................. 2

*Friends of the Earth v Laidlaw Envtl. Services*
    528 U.S. 167, 180-181 (2000) ............................................... 18

*Gadlilng-Code v. West Chester University*
    868 F.Supp.2d 390 (E.D. Pa 2012) ....................................... 14

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015) ............................................ 4, 19

*Graphic Communications Conference International Brotherhood of Teamsters Local 404M v. Bakersfield Californian*
    541 F.Supp.2d 1117, 1125 (E.D. Cal. 2008) ........................ 19

*Heller v. EBB Auto Co.,*
    8 F.3d 1433 (9th Cir. 1993) .................................... 10, 11, 12

*Hellinger v. Eckerd Corporation*
    (S.D. Fla. 1999) 67 F.Supp.2d 1359 ..................................... 12

*Jacobson v. Massachusetts*
    197 U.S. 11 (1905) .................................................................. 2

*Klaassen v. Trs. Of Ind. Univ.*
    7 F.4th 592 U.S. App. LEXIS 22785 (7th Cir. Aug. 2, 2021) .................. 2

# TABLE OF AUTHORITIES (Cont'd)

## CASES (Cont'd)                                                      PAGE

*Kheriaty v. Regents of the University of California*
   SACV 21-1367 JVS (KESx), 2021 WL 4398743, 2021 U.S. Dist. LEXIS
   184242 (D.N.J. Sept. 27, 2021) ................................................................. 2

*Lawson v. Washington*
   296 F.3d 799 (9th Cir. 2002) ................................................................. 10

*Li v. Home Depot USA Inc.*
   SACV 12-2151 AG (RNBx), 2013 U.S. Dist. LEXIS 198483, at *6
   (C.D. Cal. Jan. 7, 2013) ................................................................. 19

*Los Angeles Memorial Coliseum Com. v. National Football League*
   634 F.2d 1197 (9th Cir. 1980) ................................................................. 20

*Madsen v. Associated Chino Teachers*
   317 F.Supp. 2d 1175 (C.D. Cal. 2004) ................................................................. 10

*Munaf v. Green*
   553 U.S. 674 (2008) ................................................................. 7

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
   762 F.2d 1374, 1376 (9th Cir. 1985) ................................................................. 19

*Pac. Radiation Oncology, LLC v. Queen's Medical Center*
   810 F.3d 631 (9th Cir. 2015) ................................................................. 16

*Sagana v. Tenorio*
   384 F.3d 731 (9th Cir. 2004) ................................................................. 16

*Sampson v. Murray*
   415 U.S. 61, 90 (1974) ................................................................. 18

*Seshadri v. Kasraian*
   130 F.3d 798 (7th Cir. 1997) ................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES (Cont'd)

## CASES (Cont'd)                                                    PAGE

*Sorbello v. US Bank, NA*
   CV 12-327-JFW (VBKx), 2012 U.S. Dist. LEXIS 192030 at *2-3 (C.D. Cal.
   Apr. 18, 2012) ................................................................................................19

*Stanley v. University of Southern California*
   13 F.3d 1313, 1319-1320 (9th Cir. 1994) ..................................................19

*Stormans, Inc. v. Selecky*
   586 F.3d 1109, 1139 (9th Cir. 2009) ..........................................................20

*Streight v. Pritzker*
   No. 3:32-cv-50339, 2021 WL 4306146, 2021 U.S. Dist. LEXIS 180894 (N.D. Ill.
   Sept. 22, 2021) ..................................................................................................2

*Thomas v. National Association of Letter Carriers*
   225 F.3d 1149 (10th Cir. 2000) ...................................................................15

*Thomas v. Rev. Bd.*
   450 U.S. 707 (1981) .....................................................................................13

*United States v. Seeger*
   380 U.S. 163 (1965) .....................................................................................13

*Valdez v. Grisham*
   No. 21-cv-783 MV/JHR, 2021 Wl 4145746, 2021 U.S. Dist. LEXIS 173680
   (D.N.M. Sept. 13. 2021) ..........................................................................2, 20

*Washington v. Trump*
   847 F.3d 1151 n.3 (9th Cir. 2017) ..................................................................7

*Whitlow v. California Department of Education*
   203 F.Supp.3d 1079 (S.D. Cal. 2016) ..........................................................2

*Winter v. NRDC, Inc.*
   555 U.S. 7 (2008) ............................................................................................2

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

<u>CASES (Cont'd)</u>                                                                              <u>PAGE</u>

*Wisconsin v. Yoder*
   (1972) 406 U.S. 205 ................................................................................ 14

*Xodus v. Wackenhut Corporation*
   619 (7th Cir. 2010) ............................................................................... 12

*Zucht v. King*
   260 U.S. 174 (1922) ................................................................................ 2

## <u>STATUTES</u>

42 U.S.C. § 20003 (2)(a)(1) ......................................................................... 10

Cal. Gov. Code § 12940 (a) .......................................................................... 10

Ordinance § 4.702 ......................................................................................... 5

# I.   INTRODUCTION

Plaintiffs would like the Court to believe the City is engaged in a widespread plot to purge its payroll of people of faith and the medically vulnerable. Although such a sensational accusation makes for a snappy narrative, it has no basis in reality.  To the contrary, the City is implementing a thoughtful and robust process to afford its employees with ample opportunity to seek religious and medical exemptions from the City's requirement that all City employees be fully vaccinated for COVID-19.

On August 18, 2021, the Los Angeles City Council adopted Ordinance 187134 to combat the deadly spread of COVID-19.  FAC, Ex. 1-005-011 ("Ordinance"). The Ordinance requires all City employees to report their vaccination status and be fully vaccinated for COVID-19. On October 20, 2021, the COVID-19 vaccination and reporting requirements became conditions of employment for all City employees, although exemptions are available to accommodate employees with medical conditions or sincerely held religious beliefs that contradict the vaccine mandate.  To date, no exemption has been denied and no adverse employment action has been taken against any City employee due to vaccination status or failure to report said status. (Declaration of Leticia Ortiz, "Ortiz Dec.," ¶ 12.)  ***Importantly, employees whose requests for exemption are pending will be exempt from the COVID-19 vaccination requirement until such time as their exemption request is approved or denied***.  Pending a final determination on their exemption request, such employees will be subject to bi-weekly COVID-19 testing.  (Ortiz Dec., ¶ 15.)

Plaintiffs are employees of the Los Angeles Police Department (LAPD) who are subject to the Ordinance.[1]  On October 22, 2021, nearly two months after the City's Ordinance was adopted, and two days ***after*** its vaccination and reporting requirements became conditions of employment, Plaintiffs filed this Application for a Temporary

---

[1] One Plaintiff is a Detention Officer, two are 911 operators, one is a Forensic Print Specialist, and nine are police officers.  The Detention Officer is subject to a County Health Order (July 26, 2021) requiring vaccinations for workers in high-risk congregate settings.  (Declaration of Erika Johnson-Brooks, ¶ 1, Exh. 1).

Restraining Order ("Motion"), seeking to enjoin use of the City's religious and medical exemption forms, and seeking an "injunction prohibiting the City from taking any adverse employment action against employees for not receiving the COVID-19 vaccine until [the] Title VII/FEHA/ADA requests have received full consideration."  Motion, p. 3.  To be granted, Plaintiffs "must show": "(1) [they are] likely to succeed on the merits, (2) [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [their] favor, and (4) an injunction is in the public interest."  *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008).  Plaintiffs cannot meet any of these four factors.

First, Plaintiffs cannot show they are likely to succeed on the merits.  Rather, for over 100 years, it has been well settled that the United States Constitution allows compulsory vaccination. *Jacobson v. Massachusetts,* 197 U.S. 11, 39 (1905); *Zucht v. King,* 260 U.S. 174, 176 (1922); *French v. Davidson,* 143 Cal.658, 662 (1904); *Brown v. Smith,* 24 Cal.App.5th 1135, 1143-1144 (2018); *Whitlow v. Cal. Dep't of Educ.,* 203 F.Supp.3d 1079, 1083 (S.D. Cal. 2016).   Indeed, federal courts have universally rejected attempts to enjoin COVID-19 vaccine mandates, such as the one at issue here. *See, e.g*., *Klaassen v. Trs. Of Ind. Univ.,* 7 F.4th 592, 2021 U.S. App. LEXIS 22785 (7th Cir. Aug. 2, 2021) (affirming district court's denial of preliminary injunction motion seeking to enjoin Indiana University's vaccine mandate: "Given *Jacobson v. Massachusetts*, … which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2."); *Kheriaty v. Regents of the Univ. of Cal*., SACV 21-1367 JVS (KESx), 2021 U.S. Dist. LEXIS 196639 (C.D. Cal. Sept. 29, 2021) (University of California's vaccine mandate for employees and students); *Children's Health Def., Inc. v. Rutgers*, No. 21-15333 (ZNQ) (TJB), 2021 WL 4398743, 2021 U.S. Dist. LEXIS 184242 (D.N.J. Sept. 27, 2021) (Rutgers University's vaccine mandate for students); *Streight v. Pritzker*, No. 3:21-cv-50339, 2021 WL 4306146, 2021 U.S. Dist. LEXIS 180894 (N.D. Ill. Sept. 22, 2021) (college's vaccine mandate); *Valdez v. Grisham*, No.

21-cv-783 MV/JHR, 2021 WL 4145746, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021) (New Mexico's vaccine mandate for healthcare workers); *America's Frontline Doctors v. Wilcox*, No. EDCV 21-1243 JGB (KKx), 2021 WL 4546923, 2021 U.S. Dist. LEXIS 144477 (C.D. Cal. July 30, 2021) (University of California's vaccine mandate for employees and students); *Bridges v. Houston Methodist Hosp.,* H-21-1774, 2021 WL 2399994, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021) (hospital's vaccine mandate for employees).

Nor will Plaintiffs succeed on their assertion the City has violated their rights to seek a medical or religious exemption from the vaccine mandate. (e.g., Motion at 10:21-26.)  The online portal to submit exemption requests has been available to City employees since September 1, 2021, and remains open – a fact Plaintiffs admit in their Motion.  (*Id*. at 18:9 ["As of this filing, the online portal [to submit exemption forms] is still available."].   Ortiz Dec. ¶ 4.)   Plaintiffs' argument that the City should be restrained from using its "Religious Accommodation Certification Form," that seeks third-party verification of sincerely held religious beliefs, is misplaced because employees have already submitted religious exemption requests without the certification, and none have been rejected. The City has no intention of rejecting out of hand a religious exemption request submitted without certification.  (Ortiz Dec., ¶¶ 11, 13.)   Finally, Plaintiffs argue the "Employee Request for Medical Exemption of Vaccination Deferment" form unlawfully restricts the meaning of disability. Motion, Exh. 8. However, the form provides employees with an explicit opportunity to "use the space below or attach documents as necessary to provide any additional information you think may be helpful in processing your request." Accordingly, Plaintiffs cannot succeed on the merits.

Second, Plaintiffs cannot show a likelihood of irreparable harm because no fundamental rights have been implicated.  Plaintiffs have all submitted Notices of Intent to request religious and/or medical exemptions and, upon submission of their completed paperwork, will receive full consideration of their requests for accommodation.  The

Ordinance was passed on August 18, 2021, yet Plaintiffs waited nearly two months to file this Motion. *See, e.g., Garcia v. Google, Inc*., 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (affirming district court's finding that the plaintiff "failed to muster a clear showing of irreparable harm" where the plaintiff "waited months to seek an injunction"). If Plaintiffs were really worried about the October 20, 2021 deadline, then they should have filed their Motion sooner. *See, e.g.*, *Children's Health Def., Inc.*, 2021 U.S. Dist. LEXIS 184242, at *19-21 (no irreparable harm to party challenging Rutgers University's vaccine mandate since "Plaintiffs could have sought a preliminary injunction several months and weeks before the semester began rather than days before;" delay was a "self-inflicted harm" precluding injunctive relief). Finally, any claim of "irreparable injury" is belied by the fact Plaintiffs, if they prevail at trial, can recover damages in the form of back wages and reinstatement of employment.

Third and Fourth, Plaintiffs cannot establish the balance of equities tips in their favor, or that an injunction is in the public interest. To the contrary, both factors weigh heavily in favor of the City. As one district court recently held in denying an application to restrain the University of California from enforcing its vaccine mandate: "[T]he balance of equities and the public interest weighs heavily against the requested relief…. Vaccines address a collective enemy, not just an individual one…. Thus, Plaintiffs' decision to refuse vaccination does not affect them alone." *America's Frontline Doctors v. Wilcox*, 2021 U.S. Dist. LEXIS 144477, at *24-25 (C.D Cal. July 30, 2021). These factors weigh even more forcefully where, as here, the medical and religious rights of City employees must be balanced with the health, well-being, and safety of the entire City – a task the City does not undertake lightly.

## II.     STATEMENT OF FACTS

Ordinance No. 187134, adopted by the City Council on August 18, 2021, required all City employees to report their vaccination status by October 19, 2021, and be fully vaccinated for COVID-19—or request an exemption—by October 20, 2021. Motion, Ex. 1-005-011. The COVID-19 vaccination and reporting requirements became

conditions of employment for all City employees on October 20, 2021.  Exemptions are available to accommodate medical conditions or restrictions, or sincerely held religious beliefs.  Exemption requests are reviewed on a case-by-case basis, consistent with City reasonable accommodation request procedures.  *Id.* at Ex. 1-008 (Ordinance § 4.702).

On September 1, 2021, the City notified employees to submit their Notices of Intent to file for medical or religious exemptions by September 13, 2021 (just the intent to file for the exemption and not the actual exemption request).  The online City portal that receives the notices remains open, and employees continue to file them. (Ortiz Dec., ¶ 4.) As of October 22, 2021, the City had received a total of 5,148 Notices of Intent to request an exemption from 4,918 employees citywide. Of these, 4,284 seek religious exemptions and 864 seek medical exemptions; 230 employees intend to request both.  (Ortiz Dec., ¶ 5.)   Once a third party vendor is set up to process exemption forms, an online portal will open for employees to file exemption requests. (Ortiz. Dec., ¶ 4.)  On September 22, 2021, the City issued the "COVID-19 Vaccination Requirement Exemption Request Procedures" and forms, a link to which is emailed to all City employees who file Notices of Intent.  The documents are also available on the Personnel Department's website, https://per.lacity.org/covid19.html.  (Ortiz Dec., ¶ 8.)

Under the exemption procedures, City departments are required to "consider *any request* for medically related or religious exemption that provides sufficient notice of an employee's inability to comply with the City's COVID-19 Vaccination Requirement due to a medical condition or sincerely held religious belief." Departments also "must review requests for exemption from the City's COVID-19 Vaccination requirement on a case by case basis, and engage in the interactive process with employees who submit such requests, as appropriate." Motion, Exh. 5, at 2.

Employees seeking medical exemptions are requested to submit: (1) a completed Request for Medical Exemption/Deferment Form; and (2) a completed Health Care Provider Certification Form. Motion, Exh. 5, at 3. To be eligible for a medical exemption, the employee must check the box on the Medical Exemption/Deferment

Form stating: "The contraindications or precautions to COVID-19 vaccination recognized by the CDC or by the manufacturers apply to me, based on my disability or medical condition, with respect to all available COVID-19 vaccines." Motion, Exh. 8. However, the form provides employees with an explicit opportunity to "use the space below or attach documents as necessary to provide any additional information you think may be helpful in processing your request." (*Id.*)[2] (Ortiz Dec., ¶ 10.)

Employees seeking religious exemptions are requested to submit: (1) a completed Request for Reasonable Accommodation Religious Exemption Form; and (2) a completed Religious Accommodation Certification Form, "from their religious organization, religious leader, religious scholar, or person knowledgeable of their religious beliefs, practice or observances to support their request." The Religious Exemption Form expressly states: "The granting of an exemption request will be based on the entirety of the application and not based on any single piece of information provided."  Motion, Ex. 6.  Due to the anticipated volume of religious exemption requests and a limited number of staff to process requests, it was operationally prudent to include the Religious Accommodation Certification Form to avoid an undue burden to the City.  However, the City has accepted and continues to accept for processing completed requests whether or not the certification is submitted.  (Ortiz Dec., ¶ 11.)

Completed exemption request forms are submitted to the employee's Departmental Personnel Officer or HR Director, designee ("DPO/HR Director") "within 20 business days of the issuance of the forms to the employee." Motion, Exh. 5, at 3, 5.   This twenty business day period for submitting exemption request

---

[2]According to the Centers for Disease Control (CDC), "COVID-19 vaccines may be administered to most people with underlying medical conditions"; however, on the issue of whether a particular individual with an underlying medical condition should get a COVID-19 vaccine, CDC guidance is extremely broad and deferential to the individual's healthcare provider. See "COVID-19 vaccines for People with Underlying Medical Conditions," CDC (October 1, 2021).  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/underlying-conditions.html.

documentation is a "soft" deadline negotiated with City unions.  The City continues to accept and process exemption requests from employees submitted after the deadline and, to date, no exemption requests have been denied by the City.  Nor has any adverse employment action been taken against any City employee due to vaccination status or failure to report such status.  (Ortiz Dec., ¶ 12.)

Exemption Requests are subject to three levels of review.  Motion, Exh. 5, at 3-8.  First, designated departmental personnel make a preliminary assessment based on review and analysis of all submitted documentation and information provided by the employee. Second, the DPO/HR Director submits their preliminary assessment to the City Personnel Department's COVID-19 Exemption Review Unit within three business days.  The Review Unit will notify the DPO/HR Director of its final determination, who will then notify the employee.  Employees who wish to appeal the denial of their request for exemption may file an appeal with the Personnel Department.  Appeals (third level) will be adjudicated by department heads/General Managers after redaction of the name of the employee and identifiers in any documentation prior to submission to the department.  The department then submits its final decision to the Personnel Department and the employee is notified.  Motion, Exh. 1, at 3-8.

Importantly, employees whose requests for exemption are pending will be exempt from the COVID-19 vaccination requirement until their exemption request is approved or denied.  Pending a final determination on their exemption request, such employees will be subject to bi-weekly COVID-19 testing.  (Ortiz Dec., ¶ 15.)

## III.  LEGAL STANDARD

The standards governing preliminary injunctions and temporary restraining orders are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted).  "A preliminary injunction is an 'extraordinary and drastic remedy.'  It should never be awarded as of right." *Munaf v. Green*, 553 U.S. 674, 690 (2008) (citations omitted).  To prevail, a plaintiff must establish "that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of

preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *Winter,* 555 U.S. at 20.  Likelihood of success on the merits is a threshold inquiry and the most important factor. *See, e.g., Edge v. City of Everett,* 929 F.3d 657, 663 (9th Cir. 2019).  Where "a movant fails to meet this threshold inquiry" the Court "need not consider other factors." *Id.*, quoting *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

## IV.   ARGUMENT

### A.   Plaintiffs Cannot Show a Likelihood of Success on the Merits

Plaintiffs seek four items of injunctive relief mandating that the City: (1) activate the online portal or designate who in the City will accept exemption requests; (2) be restrained from requiring submission of the Religious Accommodation Certification Form and the Religious Exemption Form; (3) be enjoined from restricting the meaning of "disability" and interfering with independent medical opinions made on behalf of Plaintiffs; and (4) be prohibited from taking adverse employment action against Plaintiffs until their exemption requests are considered. Motion at 3:3-15. The first, second, and fourth injunction requests are unnecessary as the facts demonstrate that the City has been acting in ways consistent with what Plaintiffs demand.  As for the third injunction request, the City has not unlawfully constrained the meaning of "disability" and the City has not prohibited Plaintiffs from submitting any documentation from their medical providers that support their exemption requests.

The first injunction Plaintiffs seek is unnecessary because the City is already doing this.  As Plaintiffs admit, the City's online portal to submit Notices of Intent to Request a Vaccine Mandate exemption remains open. Motion at 18. The portal is active and available for use, and referenced on the City Personnel Department's website. Soon a second online portal will open to accept completed paperwork for the exemption requested.  (Ortiz Dec., ¶ 4.)

The second injunction Plaintiffs seek is unnecessary because the City is not forcing its employees seeking exemptions to use the Religious Accommodation

Certification Form and the Religious Exemption Form.  Yes, the City would prefer employees use the forms because it will expedite the process for everyone involved. While the City COVID-19 exemption forms include a third party verification (which could be a friend or family member), the City continues to accept all forms of religious accommodation.  Prior to development of the forms as a method of handling the high volume of anticipated requests – which turned out to be an accurate assessment – the City had a pre-existing policy of accepting any and all requests for accommodation for review and consideration.  That policy still exists and has not changed.  (Ortiz Dec., ¶ 13.)  Therefore, Plaintiffs can submit their requests for religious accommodation exempting them from the Vaccine Mandate in any format they wish by contacting their Departmental Human Resources personnel.  (Ortiz Dec., ¶ 13.)

Plaintiffs' third injunction request seeks to restrain the City from restricting the meaning of disability and interfering with the independent medical opinion of Plaintiffs' physicians.[3]  Plaintiffs' claim that the forms violate FEHA and the ADA because they refer to "contraindications or precautions to COVID-19 vaccination recognized by the CDC or by the vaccines' manufacturers."  Motion at 22-23.  Plaintiffs argue that by including this language, the City has "expressly" limited the medical conditions that would qualify for accommodation, and "rewrites the scope of protection afforded its employees for disabilities under both FEHA and ADA …." (*Id*. at 23:10-11.)  While the exemption procedures forms refer to "contraindications and precautions to COVID vaccination recognized by the CDC or by the vaccines' manufacturers", the City continues to accept all forms of medical accommodation requests with regard to the Ordinance's vaccine mandate.  (Ortiz Dec., ¶ 13.)

The fourth injunction Plaintiffs seek is also unnecessary because the City has already agreed that employees whose requests for exemption are pending will be exempt from the vaccination requirement until their exemption request is approved or

---

[3] Plaintiffs' third injunction request should be rejected because it was not pled in the FAC.

denied.   (Ortiz Dec., ¶11.)   Thus, an injunction prohibiting the City from taking an adverse employment action prior to considering an exemption request is unnecessary.

### 1. Plaintiffs Cannot Plead a *Prima Facie* Case of Religious Discrimination

Plaintiffs spend considerable time complaining about the City's use of the Religious Accommodation Certification Form and the Religious Exemption Form, alleging that they violate Title VII and FEHA because they contain "illegal questions" and that the "demand for third party verification under the penalty of perjury" violates Title VII and FEHA.  Motion at 19-22.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 20003-(2)(a)(1). FEHA prohibits discrimination against an employee "because of…religious creed." Cal. Gov. Code § 12940 (a). The analysis of a religious discrimination claim is the same under FEHA and Title VII. *Madsen v. Associated Chino Teachers,* 317 F. Supp. 2d 1175, 1180 (C.D. Cal. 2004).

To establish a *prima facie* case of religious discrimination on the basis of a failure to accommodate theory, a plaintiff must show: (1) the plaintiff had a bona fide religious belief, the practice of which conflicts with employment duties; (2) the plaintiff informed the employer of the beliefs and conflict; and (3) the employer threatened or subjected Plaintiff with discriminatory treatment, such as discharge, because of inability to fulfill the job requirements. *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002); *Heller v. EBB Auto Co*., 8 F.3d 1433, 1438 (9th Cir. 1993).

Here, Plaintiffs must show they: (1) hold sincere religious beliefs in conflict with the vaccination requirement; (2) informed Defendants' of the conflict by filling out a religious exemption form or otherwise notifying the City of the basis of their sincere religious belief; and (3) were subjected to or threatened with discriminatory treatment due to their inability to fulfill the job requirement. Only after a *prima facie* case is established, does the burden of proof shift to the City to "establish that it initiated good

faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Heller*, 8 F.3d at 1438.

Plaintiffs cannot establish a *prima facie* case of religious discrimination because: (1) none of the Plaintiffs have had an attempt to file for exemption rejected; and (2) none have been denied a religious or medical exemption to the COVID-19 vaccination requirement. (Ortiz Dec., ¶¶ 6, 12.) All thirteen Plaintiffs have submitted a Notice of Intent to request a religious exemption, and all are pending review upon receipt of Plaintiffs' completed exemption request paperwork. (Ortiz Dec., ¶¶ 6, 12, 13.) FAC ¶ 53, Ex. 3. Accordingly, Plaintiffs are unable to establish the second and third elements of a *prima facie* case, which requires notice to and interaction with the employer, and an adverse employment action by the employer. *See, e.g., Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105-DLB-EBA 2021 U.S. Dist. LEXIS 183757, at *14 (E.D. Ky. Sep. 24, 2021) (denying application for a temporary restraining order to enjoin a hospital's COVID-19 vaccine mandate where the plaintiffs were unlikely to prevail on their Title VII claim, "[b]ecause none of the Plaintiffs in this case have been denied a religious exemption, they are unable to establish the third element, which requires discharge or discipline from their employer.").

Contrary to Plaintiffs' assertions, the City has no "plan" to stop accepting requests for exemption from the COVID-19 vaccination requirement. FAC ¶¶ 59, 159. The City has continued to accept Notices of Intent to request an exemption submitted by employees after the extended September 13, 2021 deadline. (Ortiz. Dec., ¶ 4.) Plaintiffs cannot show any Notices of Intent have been refused or rejected by the City because none have been.  Additionally, the City will accept and process exemption requests from employees regardless of whether they filed a Notice of Intent. (Ortiz Dec., ¶¶ 12, 13.)  Employees whose requests for exemption are pending will be exempt from the COVID-19 vaccination requirement until such time as their exemption request

is approved or denied.  Pending a final determination on their exemption request, such employees will be subject to bi-weekly COVID-19 testing.  (Ortiz Dec., ¶ 15.)

### a. The City Has an Affirmative Obligation to Offer a Religious Exemption to the Vaccine Mandate

An employer who lacks knowledge of a religious practice and conflict with a work requirement does not violate Title VII.  An employer does not have to provide an accommodation unless the employer is on notice one is needed for religious purposes. U. S. Equal Employment Opportunity Commission Guidance, Section 12, Religious Discrimination,     https://www.eeoc.gov/policy-guidance-documents-related-religious-discrimination (EEOC Guidance); *see also Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978).   In some instances, such as here, even in absence of an initial request, the employer will be on notice that there may be a religious observance or practice that conflicts with a work policy, and accommodation could be needed. *Dixon v. Hallmark Cos.* 627 F.3d 849, 856 (11th Cir. 2010); *Brown v. Polk Cnty.*, 61 F.3d 650, 654 (8th Cir. 1995); *Hellinger v. Eckerd Corp.,* 67 F.Supp.2d 1359, 1363-1364 (S.D. Fla. 1999). However, the employer must have enough information to make the employer aware a conflict exists between the employee's religious observance, practice or belief and a requirement for performing the job.  *Xodus v. Wackenhut Corp.*, 619, 686-687 (7th Cir. 2010); *Heller v EBB Auto Co.*, 8 Fed. 1433, 1439 (9th Cir. 1993). The conflict should be specific.  Vague and ambiguous conflicts may be insufficient.

Here, the Vaccine Mandate is applicable to thousands of City employees which, in turn, means thousands of requests for exemptions. (Ortiz Dec., ¶ 5.)   Each of these requests must be reviewed and considered individually, requiring thousands of hours of Human Resource (HR) employee time.  Even with all available HR sources, the process to accomplish this important and necessary task will be difficult and time consuming. In processing these thousands of exemption requests, there are a number of considerations before a final determination can be made, and a streamlined approach denotes quicker resolutions.  Clarifying questions are necessary to ascertain the specific

conflict so the conflict can be resolved or reconciled if at all possible. Additionally, the City may be unfamiliar with the religious observance, practice or belief and need to ask the employee to explain the religious nature of the practice and the way it conflicts with the vaccine. The City's process and documentation is not limiting, in light of pre-existing City policy, but allows a streamlined approach upfront to obtain sufficient information to expedite the review process.  (Ortiz Decl., ¶ 14.)

### b. The City's Religious Exemption Process Seeks Permissible Information to Assist in Review of Exemption Requests

Determining whether a practice is religious turns not on the nature of the activity, but on the employee's motivation. This requires a review and assessment of the employee's request for accommodation via exemption from the vaccine mandate.

### (i). Religious Belief is Broadly Defined, But Does Not Include Mere Passion, Politics or Personal Preference

As stated in the EEOC Guidance, Sec. 12, Religious Discrimination Overview:

A belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a "sincere and meaningful" belief that "occupies a place in the life of its possessor parallel to that filled by God." *United States v. Seeger*, 380 U.S. 163, 166, 176 (1965). The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. *See Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981).

However, social, political, or economic philosophies, as well as mere personal preferences are not religious beliefs protected by Title VII.  In *Fallon v. Mercy Catholic Med. Ctr. Of Se. PA,* 877 F.3d 487, 492 (3rd Cir. 2017), the court stated:

[A]n employee's objection to the flu vaccine did not qualify as a religious belief protected by Title VII because his beliefs that "one should not harm their own body and … that the flu vaccine may do more harm than good" did not "address fundamental and ultimate questions having to do with deep and imponderable matters" and were not "comprehensive in nature."

Nevertheless, a religious view that overlaps with a political view may still fall within the scope of Title VII's religion protection "as long as that view is part of a

13

comprehensive religious belief system and is not simply an 'isolated teaching.'" EEOC Guidance Sec, 12, Coverage; *see also Gadlilng-Code v. W. Chester Univ.,* 868 F.Supp.2d 390, 396-397 (E.D. Pa 2012) (emphasizing Title VII religious discrimination claims  held cognizable when topics "overlap both the religious and political spectrum, such as abortion, so long as the claims are based on a plaintiff's bona fide religious belief.") Thus, the focus is not on the activity, but on whether the employee's participation in the activity is pursuant to a religious belief.  In one case, there may need to be a reasonable accommodation when the practice is one for religious reasons while no accommodation is necessary if done for a secular reason.   Additionally, feeling passionately about something is not enough to give it the status of a religion in someone's life.  A personal preference is not religious in nature. *Wisconsin v. Yoder,* 406 U.S. 205, 215 (1972) ("[B]elief that is philosophical and personal rather than religious does not rise to the demands of the Religion Clauses."); *see also Brown v. Smith,* 24 Cal.App.5th 1135, 1144 (2018).  Assessing these complicated issues requires an individualized assessment of each employee's request for exemptions, and gathering of information from all.

### (ii). An Employer May Examine the Sincerity of a Religious Belief, and the City Forms are Designed for That Purpose

If an employer has an objective basis for questioning the nature or the sincerity of a particular belief, observance, or practice, the employer is justified in seeking additional supporting information.  Where an employer has a bona fide doubt as to the basis for the accommodation request, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation.  EEOC Guidance Sec, 12, Coverage.  An employer may ask questions about the nature and tenets of the asserted religious beliefs, and/or any associated practices, rituals, clergy, observances, etc., in order to identify a specific religious belief, observance, or practice or determine if one is at issue, which conflicts with an employment requirement. *See Seshadri v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997).

Additionally, an employer may ask for evidence to support the employee's claim. The evidence can be in the form of oral statements, affidavits, or other documents from the employee's religious leaders, if applicable, or others whom the employee identifies as knowledgeable regarding the religious belief, observance, or practice in question that conflicts with an employment requirement. EEOC Q&A, Religious Discrimination, https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace; *see Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977) For instance, if an employee requests a religious accommodation because religious belief prevents the employee from using products developed or tested on fetal cells, the employer may, by way of example, make the following inquiries to evaluate sincerity:

1. Please describe your religious beliefs regarding the use of medicines developed using or tested on fetal cell lines.
2. How long have you held this belief?
3. Have you used any products tested on a fetal cell line?
4. If so, how do your religious beliefs allow you to use other medicines, but not the COVID-19 vaccine?

An employee who fails to cooperate with an employer's reasonable request for verification of the sincerity or religious nature of a professed belief risks losing any subsequent claim that the employer improperly denied an accommodation. Both the employee and employer play very important roles in resolving the accommodation request. Courts endorse a cooperative information-sharing process between employer and employee for religious accommodation requests, similar to the "interactive process" used for disability accommodation requests under the American with Disabilities Act. See *Ansonia Bd. of Educ. V. Philbrook*, 479 U.S. 60, 69 (1986); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 n.5 (10th Cir. 2000). Plaintiffs' third injunction should be rejected as it was not pled in the FAC, and the City seeks appropriate input through the process.

### (iii). City Forms Seek Information Sufficient to Consider Religious Exemptions in Light of the High Volume of Requests

While the City exemption forms include a third party verification to assist the City in processing the high volume of exemption requests, the City continues to accept

all forms of religious accommodation requests, consistent the City's pre-existing policy of accepting any and all requests for accommodation for review and consideration. That policy still exists and has not changed.  (Ortiz Dec., ¶13.)  Therefore, Plaintiffs can submit their requests for religious accommodation in any format they wish by contacting their Departmental Human Resources personnel.  (Ortiz Dec., ¶13.)

### 2.  Plaintiffs Cannot Establish Medical Disability Discrimination

Plaintiffs incorrectly claim the City's forms violate FEHA and the ADA because they refer to "contraindications or precautions to COVID-19 vaccination recognized by the CDC or by the vaccines' manufacturers."  Motion at 22-23.  Plaintiffs argue that the City has "expressly" limited the medical conditions that would qualify for accommodation, and "rewrite[n] the scope of protection afforded its employees for disabilities under both FEHA and ADA."  *Id*. at 23:10-11.

First, Plaintiffs' claim is not properly the subject of the Motion because Plaintiffs do not allege it in their FAC.  "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).  Indeed, although Plaintiffs refer to and cite the Americans with Disabilities Act in its Motion (*Id*. at 22:19-20), the FAC does not assert a claim under the ADA.  And to the extent the FAC generally asserts a claim for violation of FEHA, nothing in the FAC generally, or the FEHA claim specifically (FAC at ¶¶ 167-80), raised issues with the exemption forms relating to medical conditions.  Accordingly, Plaintiffs' third injunction request should be denied on this basis alone.

Moreover, Plaintiffs' motion should be denied because they have not established, nor can they, that the City has denied them a reasonable accommodation based on a particular medical condition.  Indeed, the City has not denied any of the medical exemption submissions.  (Ortiz Decl. ¶ 11.)  This also compels denial of the Motion.  *See, e.g., Beckerich v. St. Elizabeth Med. Ctr*., No. 21-105-DLB-EBA) 2021 U.S. Dist. LEXIS 183757, at *14 (E.D. Ky. Sep. 24, 2021) (denying application for a temporary

restraining order to enjoin a hospital's COVID-19 vaccine mandate where the plaintiffs were unlikely to prevail on their ADA claims: "no Plaintiff in this case has suffered an adverse employment decision because of a disability, which is the third element of a prima facie case under the ADA…. In the absence of the claim's prima facie elements, their ADA claim has very little likelihood of success.").

Plaintiffs' arguments are also factually incorrect. Although the exemption procedures forms refer to CDC guidance, the CDC guidance contains extremely broad categories of possible medical exemptions plus the option that other unlisted ones might apply. According to the CDC, "COVID-19 vaccines may be administered to most people with underlying medical conditions." However, as to whether a particular individual with an underlying medical condition or disability should get a COVID-19 vaccine, CDC guidance is extremely deferential to the individual's healthcare provider. (Ortiz Dec., ¶ 10.)

And while the exemption procedures forms refer to "contraindications and precautions to COVID vaccination recognized by the CDC or by the vaccines' manufacturers," the City continues to accept all forms of medical accommodation requests with regard to the Ordinance's vaccine mandate, which is consistent with the City's pre-existing policy of accepting any and all requests for accommodation for review and consideration. (Ortiz Dec., ¶ 13.)

### 3. Plaintiffs Lack Standing for Their Title VII and FEHA Claims

Plaintiffs' FAC and Motion confirm they were not denied religious or medical accommodation, nor threatened with or subjected to mistreatment due to their religious beliefs or medical condition. This is because none of the Plaintiffs have submitted any evidence that their exemptions have been denied—because they haven't been. Thus, because Plaintiffs have suffered no harm, they lack standing – individually and collectively – to pursue this lawsuit. *Friends of the Earth v Laidlaw Envtl. Services,* 528 U.S. 167, 180-181 (2000). Accordingly, based on their inability to state a *prima facie* case, Plaintiffs are unlikely to succeed on their claims for religious discrimination.

**B.    Plaintiffs Have Not Demonstrated Irreparable Harm If the City Continues to Utilize its Exemption Procedures**

Even if Plaintiffs were able to show a likelihood of success on the merits, which they cannot, Plaintiffs' Motion must be denied because they cannot show a likelihood of irreparable injury absent grant of the restraining order. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered [if Plaintiffs prevail], does not usually constitute irreparable injury.")  Here, Plaintiffs cannot show irreparable harm because: (1) the City has an active online portal for submission of Intent to Request forms and will shortly have a portal to receive completed exemption request paperwork; (2) prior City policy remains in place allowing submission of requests for accommodation through any manner; and (3) the City has not and will not take adverse action against employees without full consideration of all requests.

Plaintiffs also complain that "the only form allowed by the City by which Plaintiffs and other LAPD personnel may file their requests violates the law to the extent it requires information and third party verifications.  Motion at 24.  But as discussed above, the Exemption Procedures forms are not unlawful. Moreover, the forms are not the only method for requesting either accommodation. (Ortiz Dec., ¶ 13.)

The other "harms" to which Plaintiffs allude are not irreparable harm that requires extraordinary relief.  Plaintiffs claim they "will be left without work absent intervention by this Court." Motion at 10.  However, all of the Plaintiffs have submitted a Notice of Intent to request a religious exemption, and assuming they submit the completed exemption paperwork, Plaintiffs will not face "imminent" loss of City employment. (Ortiz Dec., ¶¶ 6, 12, 13.)  Plaintiffs do not face irreparable harm because "[i]n general, the hardships caused by temporary loss of employment do not constitute irreparable harm." *Graphic Commc'ns Conference Int'l Bhd of Teamsters Local 404M v. Bakersfield Californian*, 541 F.Supp.2d 1117, 1125 (E.D. Cal. 2008).  Plaintiffs have not and cannot show that money damages and recovering back pay in the event they lose their employment are inadequate remedies to redress their situation if they prevail

18

at trial. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319-1320 (9th Cir. 1994) (money damages and back pay are adequate remedies for loss of employment).

Finally, Plaintiffs' claim of "irreparable harm" is also belied by their lengthy delay in bringing this Motion. The Ninth Circuit Court of Appeals has held that "delay undercut[s] [a plaintiff's] claim of irreparable harm." *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc); *see also Sorbello v. US Bank, NA*, CV 12-3327-JFW (VBKx), 2012 U.S. Dist. LEXIS 192030, at *2-3 (C.D. Cal. Apr. 18, 2012) ("A plaintiff's delay in seeking relief weighs heavily against granting a … preliminary injunction."); *see Li v. Home Depot USA Inc.*, SACV 12-2151 AG (RNBx), 2013 U.S. Dist. LEXIS 198483, at *6 (C.D. Cal. Jan. 7, 2013) (three month delay between notice of claim and motion—"implies a lack of urgency and irreparable harm").

In sum, Plaintiffs cannot and do not show irreparable harm. This alone is fatal to their Motion. *See*, *e.g.*, *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("Because the [plaintiff] has not made that minimum showing we need not decide whether it is likely to succeed on the merits.").

## C. The Remaining *Winter* Factors, the Balance of Equities and the Public Interest, Tip Heavily in Favor of the Public Interest

"Traditional standards for granting a preliminary injunction impose a duty on the court to balance the interests of all parties and weigh the damage to each, mindful of the moving party's burden to show the possibility of irreparable injury to itself and the probability of success on the merits." *Los Angeles Memorial Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1204 (9th Cir. 1980). Moreover, "[i]f…the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). "When an injunction is asked which will adversely affect a public interest … the court may in the public interest withhold relief until a final determination of the rights of the parties…." *Id.* (quotation marks omitted).

First, the balance of equities does not tip in Plaintiffs' favor.  Here, as numerous district courts have already held, "the balance of equities tips in Defendants' favor given the strong public interest here they are promoting—preventing further spread of COVID-19, a virus that has infected and taken the lives of thousands of residents… Plaintiffs' requested relief here would weaken the efforts of Defendants to carry out those goals." *Valdez*, 2021 U.S. Dist. LEXIS 173680, at \*43-44 (quotation marks and citation omitted).  In short, the medical and religious rights of City employees must be balanced with the health, well-being, and safety of the entire City.  In setting up the portal for exemptions and instituting its detailed review process, the City seeks to determine which of its employees are exempt in order to limit employee and public exposure to COVID.  Thus, the balance of equities tips sharply in the City's favor.

Second, the public interest in preventing the spread of COVID-19 and protecting the City's workforce and the public with whom Plaintiffs routinely interact far outweighs any alleged burden to Plaintiffs in submitting forms to determine the nature of the disability and religious exemptions requested.  Indeed, Plaintiffs are unable to point to any public interest whatsoever for the extraordinary relief they seek; rather, they only point to their own interest.  Motion at 26:23-25 [public interest served because they Ordinance is "a direct attack … on Plaintiffs' bodily integrity"].)

# V.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny this application for a preliminary injunction/temporary restraining order in its entirety.

///
///
///
///
///
///
///

DATED:  October 25, 2021

Respectfully submitted,
MICHAEL N. FEUER, City Attorney
VIVIENNE SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS,**
   Deputy City Attorney
**JENNIFER GREGG,** Deputy City Attorney
**TRAVIS T. HALL,** Deputy City Attorney

By _____/s/  *Erika Johnson-Brooks*_____
   **ERIKA JOHNSON-BROOKS**
       Deputy City Attorney

Attorneys for Defendants CITY OF LOS ANGELES; ERIC GARCETTI, Mayor of City of Los Angeles; MICHEL MOORE, Chief of the Los Angeles Police Department