MICHAEL N. FEUER, City Attorney
VIVIENNE A. SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS**, Deputy City Attorney (SBN 210908)
**JENNIFER GREGG**, Deputy City Attorney (SBN 193037)
**TRAVIS T. HALL**, Deputy City Attorney (SBN 301755)
200 North Main Street, 800 City Hall East
Los Angeles, California 90012-4131
Telephone:   (213) 978-7156 / (213) 978-7153 / (213) 978-7151
E-mail:      *Erika.Johnsonbrooks@lacity.org; jennifer.gregg@lacity.org*
             *Travis.t.Hall@lacity.org*

Attorneys for Defendants CITY OF LOS ANGELES,
ERIC GARCETTI, MICHEL MOORE, AND MATTHEW SZABO

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LEMONS, RODGINALD CAYETTE, MICHAEL PUNO, SUSANA REYNOSO, ANA FUENTES, MICHAEL PARKS, EVLIN AKSERELIAN, MATTHEW GONZALEZ, PATRICIA GONZALEZ, LAURISSA PROVOST, SUSAN GARCIA, CHRISTOPHER SILVA, GEORGINA GRIEGO | ) **CASE NO. 2:21-cv-07296-RGK-JPR** ) ) ) ) **NOTICE OF MOTION AND MOTION** ) **OF DEFENDANTS TO DISMISS THE** ) **FIRST AMENDED COMPLAINT FOR** ) **FAILURE TO STATE A CLAIM** ) **(FRCP 12(b)(6))** ) |
| Plaintiff, | ) |
| vs. | ) Hearing Date: December 13, 2021 ) Time:            9:00 a.m. ) Place:            Courtroom 850, 8th Floor |
| CITY OF LOS ANGELES; ERIC GARCETTI, Mayor of City of Los Angeles; MICHAEL MOORE, Chief of the Los Angeles Police Department; MATTHEW SZABO, Los Angeles City Administrative Officer, and DOES 1-50, Inclusive; | ) ) ) ) Honorable R. Gary Klausner ) United States District Judge ) ) |
| Defendants. | ) ) |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION TO DISMISS ................................1

I.   INTRODUCTION ....................................................................2

II.  STATEMENT OF FACTS ........................................................4

III. LEGAL STANDARD ..............................................................4

IV.  PLAINTIFFS' ALLEGATIONS FAIL TO STATE ANY COGNIZABLE
     CLAIMS AGAINST DEFENDANTS ...........................................5

     1. There Is No Violation of Plaintiffs' Right to Privacy Under the Fourth
        and Fourteenth Amendments...............................................5

     2. There Is No Violation of Plaintiffs' Right to Privacy Under the
        California Constitution .....................................................7

        a. Disclosure of Vaccination Status Is Not a Violation of
           Privacy Rights ...........................................................8

        b. Mandatory Vaccinations Are Not A Violation of Privacy Rights ......10

     3. There Is No Violation of Plaintiffs' Right To Due Process Under the
        Fourteenth Amendment ...................................................11

        a. The City's Vaccine Mandate Is Subject to Rational Basis
           Scrutiny....................................................................11

        b. The Vaccine Mandate Is Rationally Related to A Compelling
           Interest in Stemming the Spread And Consequences of COVID-19
           to Protect the City's Workforce and the Community It Serves ..........12

        c. The City's Vaccine Mandate Is Not an Unconstitutional
           Condition .................................................................14

## TABLE OF CONTENTS (Cont'd)

**PAGE**

4.  There Is No Violation of Plaintiffs' Right to Due Process Under
    42 U.S.C. Section 1983 ............................................................16

5.  There Is No Religious Discrimination Under Title VII and FEHA ........17

    a.  Plaintiffs Are Unable to Plead a *Prima Facie* Case of
        Discrimination ....................................................................17

    b.  Plaintiffs Lack Standing for Their Title VII and FEHA Claims.........18

V.   CONCLUSION ..............................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES                                                                                                        PAGE

*Alfred v. Walt Disney Co.*,
   388 F. Supp. 3d 1174 (C.D. Cal. 2019) ...................................................4

*America's Frontline Doctors v.* Wilcox
   2021 WL 4546923, 2021 U.S. Dist. LEXIS 144477
   (C.D. Cal. July 30, 2021) .............................................................3,12,15

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)...................................................................5

*Beckerich v. St. Elizabeth Med.Ctr.*
   2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021) ...........................3,18

*Bridges v. Houston Methodist Hosp.*,
   2021 U.S. Dist. LEXIS 110382, at*5-6 (S.D. Tex. June 12, 2021) ...............7,16

*Brown v. Smith*
   24 Cal.App.5th 1135, 1143-1144 (2018)....................................................3

*In re Century Aluminum Co. Securities Litigation*
   729 F.3d 1104 (9th Cir. 2013) ...................................................4

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
   508 U.S. 520 (1993)...................................................................12

*City of Cleburne v. Cleburne Living Ctr.*
   473 U.S. 432 (1985).................................................................12

*Co. of Los Angeles Dept of Public Health v. Superior Court*
   61 Cal.App.5th 478, 487-488 (2021).........................................11,12

*Coshow v. City of Escondido*
   132 Cal.App.4th 687 (2005) ...................................................8

*In re Crawford*
   194 F.3d 954 (9th Cir. 1999) ...................................................8

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

<u>CASES</u>                                                                          <u>PAGE</u>

*Cruzan v. Dir., Missouri Dep't of Public Health*
    497 U.S. 261 (1990)................................................................14

*Endy v. City of Los Angeles*
    975 F.3d 757 (9th Cir. 2020) ...............................................8

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*
    880 F.3d 450 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018) ....................12

*French v. Davidson*
    143 Cal. 658 (1904) ............................................................3

*Friends of the Earth v Laidlaw Envtl. Services*
    528 U.S. 167 (2000)............................................................18

*Hanford Exec. Mgmt. Emle. Ass'n v. City of Hanford*
    2012 U.S. Dist. LEXIS 23161 (E.D. Cal. Feb. 22, 2021) ...............................15

*Heller v. EBB Auto Co.*
    8 F.3d 1433 (9th Cir. 1993) .........................................17, 18

*Hill v. National Collegiate Athletic Assn.*
    7 Cal.4th 1 (1994) ................................................8, 9,10

*Jacobson v. Massachusetts*
    197 U.S. 11 (1905)................................................2,3, 9, 10, 11

*Klaassen v. Trs. Of Ind. Univ.*
    7 F.4th 592, 2021 U.S. App. LEXIS 22785 (7th Cir. Aug. 2, 2021)...................3

*Klaassen v. Trs. of Ind. Univ.*
    2021 U.S. Dist LEXIS 133300 ................................................11,12,14,15,16

*Koontz v. St. Johns River Water Mgmt. Dist*.
    570 U.S. 595 (2013)..........................................................14

### <u>TABLE OF AUTHORITIES (Cont'd)</u>

<u>CASES</u>          <u>PAGE</u>

*Lawson v. Washington*
   296 F.3d 799 (9th Cir. 2002) ..................................................17

*Love v. State Dept. of Education*,
   29 Cal.App.5th 980, 984 (2018) .........................................8,10

*Madsen v. Associated Chino Teachers*,
   317 F.Supp. 2d 1175 (C.D. Cal. 2004) ..............................17

*Mapp v. Ohio*,
   367 U.S.643 (1961).................................................................5

*Massachusetts Board of Retirement v. Murgia*,
   427 U.S. 307 (1976).............................................................15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .............................................5

*Missouri v. McGinley*,
   569 U.S. 141 (2013)...........................................................5,6

*Miura Corp. v. Davis*,
   2020 U.S. Dist. LEXIS 165655 (C.D. Cal. 2020) .............11

*Rawlings v. Kentucky*,
   448 U.S. 98 (1980)................................................................5

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S.Ct. 63 (2020)............................................................12

*Sagana v. Tenorio*,
   384 F.3d (9th Cir. 2004) ....................................................16

*Streight v. Pritzker*,
   2021 U.S. Dist. LEXIS 180894 (N.D. Ill. Sept. 22, 2021) ...............................3,7

*Valdez v. Grisham*,
   2021 WL 4145745, 2021 U.S. Dist. LEXIS 173680
   (D.N.M. September 13, 2021) ..........................................3,16

## TABLE OF AUTHORITIES (Cont'd)

**CASES**      **PAGE**

*Vance v. Barrett,*
   345 F.3d 1083 (9th Cir. 2003) ............................................................14

*Vernonia School Dist. 47J v. Acton,*
   515 U.S. 646 (1995).............................................................................6

*Washington v. Glucksberg,*
   521 U.S. 702 (1997).............................................................................14

*Whitlow v. Cal. Dep't of Educ.,*
   203 F.Supp.3d 1079 (S.D. Cal. 2016)..................................................3

*Williams v. Brown,*
   2021 WL 4894264, 2021 U.S. Dist. LEXIS 201423
   (D. Or. Oct. 19, 2021)........................................................................ 3

*Williams v. Santiago,*
   2016 U.S. Dist. LEXIS 151491 (E.D. Cal. Nov. 1, 2016)...................15

*Wilson v. California Health Facilities Com.,*
   110 Cal.App.3d 317 (1980) ................................................................8

*Yin v. State of California,*
   95 F.3d 864 (9th Cir. 1996) ................................................................6

*Zucht v. King,*
   260 U.S. 174 (1922).........................................................................2,3

## STATUTES

## UNITED STATES CODE

21 U.S.C Section 360bbb-3(e)(1)(A)(ii)...............................................16
42 U.S.C. Section 1983........................................................................3,16
42 U.S.C. Section 20003-(2)(a)(1).......................................................17

**FEDERAL RULE OF CIVIL PROCEDURE**
Rule 12(b)(6)...................................................................................4

**GOVERNMENT CODE**
Section 3100......................................................................................9
Section 12900....................................................................................5
Section 12940(a)..............................................................................17

**CALIFORNIA CONSTITUTION**
Article 1, Section 1.........................................................................5,7

**CALIFORNIA CODE OF REGULATIONS**
8 CCR Section 336...........................................................................9
8 CCR Section 3205(7)(D)(8) and (9)..........................................9
8 CCR Section 3205(c)(3)(B)..........................................................9
8 CCR Section 3205(c)(6)................................................................9

**LOS ANGELES CITY CHARTER**
Section 506(d)..................................................................................3

**LOS ANGELES CITY ORDINANCE**
Ordinance No.187134.......................................................................2
Section 4.701(a)..............................................................................12
Section 4.705(2)..............................................................................12

**OTHER AUTHORITIES**

**Food Drug and Cosmetic Act (FDCA)**
Section 564.....................................................................................16

**Website**
https://www.eeoc.gov/newsroomeeoc-issues-updated-covid-19-technical-assistance..........................................................................................9

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 13, 2021, in Courtroom 850 in the Roybal Federal Building and U.S. Courthouse, 255 E. Temple Street, Los Angeles, California 90012, the Honorable R. Gary Klausner presiding, Defendants the City of Los Angeles, Mayor Eric Garcetti, LAPD Chief Michel Moore, and CAO Matthew Szabo ("Defendants"), will move to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Lemons, Cayette, Puno, Reynoso, Fuentes, Parks, Akserelian, Gonzalez, Gonzalez, Provost, Garcia, Silva and Griego ("Plaintiffs") in its entirety without leave to amend.  The City moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as to all of causes of action.

This Motion is based on this Notice of Motion and attached Memorandum of Points and Authorities, the Request for Judicial Notice, all pleadings and papers on file in this action, and on other such matters and arguments as may be presented to this Court in connection with this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 3, 2021.[1]

Dated:  November 9, 2021     Respectfully submitted,
                                 MICHAEL N. FEUER, City Attorney
                                 VIVIENNE A. SWANIGAN, Assistant City Attorney
                                 **ERIKA JOHNSON-BROOKS**, Deputy City Attorney
                                 **JENNIFER GREGG**, Deputy City Attorney
                                 **TRAVIS T. HALL**, Deputy City Attorney

                                 By*:      /s/ Erika Johnson-Brooks*_____
                                      **ERIKA JOHNSON-BROOKS**
                                         Deputy City Attorney

                                   Attorneys for Defendants

---

[1] Due to Plaintiff's counsel unavailability on November 2, 2021, counsel for the parties met and conferred on November 3, 2021.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

To combat the deadly spread of COVID-19, on August 18, 2021, the Los Angeles City Council adopted Ordinance 187134, requiring all City employees to report their vaccination status by October 19, 2021, and be fully vaccinated for COVID-19—or request an exemption—by October 20, 2021.  First Amended Complaint (FAC), Ex. 1-005-011 ("Ordinance").  On October 20, 2021, the COVID-19 vaccination and reporting requirements became conditions of employment for all City employees.  Exemptions to the Vaccine Mandate are available to accommodate medical conditions or sincerely held religious beliefs.  (*See* Request for Judicial Notice "RJN", Exhibit B, ¶ 3.)

Plaintiffs are employees of the Los Angeles Police Department (LAPD) who are subject to the Ordinance.[2]  Plaintiffs' FAC contends that the vaccination and reporting requirements are unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution, the California Constitution, Title VII of the Civil Rights Act of 1964, and the California Fair Employment and Housing Act.  FAC, ¶ 1.

Plaintiffs' FAC fails to state viable claims because Plaintiffs: (1) cannot establish a right to privacy under the special needs balancing test of the Fourth and Fourteenth Amendments because of the urgent nature and immediacy of the government's concern in a worldwide pandemic, and because the vaccination mandate is the safest and most effective way to address this concern; (2) cannot establish a right to privacy under the California Constitution because disclosure of vaccination status does not violate privacy rights and compulsory vaccinations have long been held to be within the police power of the State and local authorities[3]; (3) cannot establish a right to due process violation under

---

[2]Two of the Plaintiffs are 911 operators, one is a Detention Officer, one is a Forensic Print Specialist, and 9 are police officers.  The Detention Officer is subject to a County Health Order (July 26, 2021) requiring vaccinations for all workers in high risk congregate settings.  (*See* RJN, Exhibit A, ¶ 2).

[3]For over 100 years, it has been well settled that the United States Constitution allows compulsory vaccination.  *Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905); *Zucht v.*

the Fourteenth Amendment because the City's vaccination mandate is rationally related to its compelling interest in stemming the spread of COVID-19 in its workforce and community; (4) cannot establish a due process violation under 42 U.S.C. §1983 due to their erroneous contention that COVID-19 vaccines remain under Emergency Use Authorization (EUA); and (5) do not allege that they have been denied a religious exemption or that any of their Notices of Intent to file exemptions have been refused or rejected by the City.

Federal courts have universally rejected similar claims challenging COVID-19 vaccine mandates, such as the one at issue here.  *See, e.g.*, *Klaassen v. Trs. Of Ind. Univ.,* 7 F.4th 592 (7th Cir. Aug. 2, 2021) (affirming district court's denial of preliminary injunction motion seeking to enjoin Indiana University's vaccine mandate:  "Given *Jacobson v. Massachusetts*, … which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2."); *Williams v. Brown*, 2021 WL 4894264, 2021 U.S. Dist. LEXIS 201423 (D. Or. Oct. 19, 2021) (no likelihood of success on due process claims); *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 U.S. Dist. LEXIS 183757 (E.D. Ky. Sept. 24, 2021) (no likelihood of success on Title VII claim); *Streight v. Pritzker*, 2021 WL 4306146, 2021 U.S. Dist. LEXIS 180894 (N.D. Ill. Sept. 22, 2021) (no likelihood of success on Fourth Amendment claim); *Valdez v. Grisham*, 2021 WL 4145746, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021) (no likelihood of success on claims for violation of due process and the federal Food, Drug, and Cosmetic Act); *America's Frontline Doctors v. Wilcox*, 2021 WL 4546923, 2021 U.S. Dist. LEXIS 144477 (C.D. Cal. July 30, 2021) (no likelihood of success on Fourteenth Amendment right to bodily integrity claim).

---

*King*, 260 U.S. 174, 176 (1922); *French v. Davidson*, 143 Cal.658, 662 (1904); *Brown v. Smith*, 24 Cal.App.5th 1135, 1143-1144 (2018); *Whitlow v. Cal. Dep't of Educ.*, 203 F.Supp.3d 1079, 1083 (S.D. Cal. 2016); *see also* Los Angeles City Charter Section 506(d).

For all of these reasons, Plaintiffs' FAC should be dismissed in its entirety without leave to amend.

## II.   STATEMENT OF FACTS

On August 18, 2021, the Los Angeles City Council adopted Ordinance No. 187134, which became legally effective on August 25, 2021.  The Ordinance required all City employees to report their vaccination status by October 19, 2021, and to be fully vaccinated for COVID-19—or request an exemption—by October 20, 2021. FAC, Ex. 1-005-011.  Exemptions are available to accommodate medical conditions or restrictions, or sincerely held religious beliefs.  Any employee approved for an exemption must still report their vaccination status.  Employees who receive exemptions are subject to weekly COVID-19 testing.  (*See* RJN, Exhibit B, ¶ 3.)

On September 1, the City notified employees to submit their Notices of Intent to file for medical or religious exemptions.  The online City portal which receives the notices remained open as of October 25, 2021, and employees continue to file them.  The portal was scheduled to switch to a new portal shortly thereafter, once a third party vendor (Bluestone) portal was launched to receive and process completed exemption paperwork. (*See* RJN, Exhibit B, ¶4.)  On September 22, the City issued the "COVID-19 Vaccination Requirement Exemption Request Procedures," and forms to all City employees.  FAC ¶¶ 56-58, Exhs. 4-6. The completed forms "are to be submitted … within twenty (20) business days of the issuance of the forms to the employee." *Id*. To date, no exemptions have been denied.  (*See* RJN, Exhibit B, ¶ 11.)

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss "can be based on either a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Alfred v. Walt Disney Co.*, 388 F. Supp. 3d 1174, 1180 (C.D. Cal. 2019) (citations omitted).  To survive a motion to dismiss for failure to state a claim, a plaintiff's factual allegations in the complaint "must . . . suggest that the claim has at least a plausible chance of success." *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1107 (9th Cir. 2013);

*see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").   In reviewing a motion to dismiss, the court may consider the allegations in the complaint as well as "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

# IV.   PLAINTIFFS' ALLEGATIONS FAIL TO STATE ANY COGNIZABLE CLAIMS AGAINST DEFENDANTS

Plaintiffs claim the Vaccine Mandate (including testing of employees granted an exemption) infringes on: (1) their right to privacy under the Fourth and Fourteenth Amendments; (2) their right to privacy under Art. I, §1 of the California Constitution; (3) their right to due process (bodily integrity) under the Fourteenth Amendment; (4) their right to informed and voluntary consent under the Emergency Use Authorization statute; (5) the prohibition against religious discrimination under Title VII of the Civil Rights Act of 1964; and (6) the prohibition against religious discrimination under the California Fair Employment and Housing Act, Gov. Code §12900 *et seq* (FEHA).   For the reasons set forth below, Plaintiffs' claims have no plausible chance of success.

## 1.   There Is No Violation of Plaintiffs' Right to Privacy Under the Fourth and Fourteenth Amendments

Plaintiffs' allegations fail to state a viable Fourth Amendment claim.   In Count 1, Plaintiffs allege the City's Vaccine Mandate violates their Fourth (and Fourteenth) Amendment right to be free from unreasonable searches and seizures.   FAC, ¶¶ 65, 69. The Fourth Amendment is implicated when the government's challenged conduct invades a person's legitimate expectation of privacy in the area searched or item seized.   *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980).   The Fourth Amendment right of privacy is applicable to states through the Due Process Clause of the Fourteenth Amendment.   *Mapp v. Ohio,* 367 U.S.643, 655 (1961).   The Supreme Court recognizes a reasonable expectation of privacy when bodily integrity is at issue.   *See*, *e.g.*, *Missouri v. McGinley*,

569 U.S. 141, 143 (2013) (withdrawing blood from driver suspected of driving under the influence was an invasion of bodily integrity).

Medical examinations and tests unrelated to law enforcement are analyzed under a "special needs" balancing analysis. *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 653 (1995); *Yin v. State of California*, 95 F.3d 864, 869 (9th Cir. 1996). Under this test, the court determines if the search is reasonable by weighing the privacy interests of the individual against the government's interests in the "search." *Id.* at 870. The government does not have to use the least restrictive means to further its interests. *Id.* at 663. Nor must the government establish a "compelling state interest," in the sense of an absolute quantum of interest to justify the search or seizure. *Id.* at 661. Instead, a Fourth Amendment "special needs" analysis requires the court to consider: (1) the nature of the privacy interest affected; (2) the character of the intrusion; (3) the nature and immediacy of the government concern; and (4) the efficacy of this means of addressing the concern. *Vernonia*, 515 U.S. at 654-64. Each factor weighs in favor of the City.

First, even assuming arguendo the Ordinance implicates Plaintiffs' Fourth Amendment rights, when one voluntarily undertakes a job, he voluntarily trades away some of his privacy for the job. *See, e.g.*, *Yin*, 95 F.3d at 871 (an employee has a "somewhat reduced expectation of privacy in the workplace … as well as vis-à-vis her employer" (citation omitted)). Here, in particular, the Memorandum of Understanding (MOU) that governs Plaintiffs' employment with the City mandates that police officers submit to random drug testing as a condition of their employment, thereby providing one example of how Plaintiffs have already agreed to trade away some of their privacy rights in exchange for their employment. (*See* RJN, Exhibit, C, pp. 15-20.)

Second, the character of the intrusion is low. Plaintiffs equate the intrusion at issue as the "highly intrusive, forced injection [of the COVID-19 vaccine] into Plaintiffs against their will…." FAC ¶ 69. That is wrong. The City is not acting as a medical provider and physically injecting Plaintiffs with the vaccine. Moreover, Plaintiffs are not being "forced" to receive an injection. Instead, Plaintiffs must be vaccinated if they wish to

remain employed with the City in service of the public.  If Plaintiffs object to the vaccination, and do not qualify for exemption, they are free to find other employment. *Bridges v. Houston Methodist Hosp*., 2021 U.S. Dist. LEXIS 110382, at \*5-6 (S.D. Tex. June 12, 2021).

Third, the nature and immediacy of the government concern here is clear given the possibility of serious illness or death from contracting COVID-19.  This concern has grown in recent months, with the prevalence of the highly-transmissible Delta variant of COVID, which is now the dominant strain both in Los Angeles and across the country. (*See* RJN, Exhibit D.)  The longer City employees remain unvaccinated, the greater the risk of exposure to the Delta variant — for themselves and those who interact with them. Indeed, federal courts have recognized this risk in rejecting Fourth Amendment challenges to COVID-19 vaccine mandates.  *See, e.g.*, *Streight*, 2021 U.S. Dist. LEXIS 180894, at \*13-15.

Fourth, the efficacy of the Vaccine Mandate in addressing the City's concern for the health and safety of its employees and the public is overwhelming — enough to leave one district court "dumbfounded that it even must engage in this discussion… [since] real data shows that these vaccines, like so many others before, are generally safe and effective." *Streight*, 2021 U.S. Dist. LEXIS 180894, at \*17-18.  *Streight* further relied on a CDC finding that, "vaccination is the best way to protect yourself, your family, and your community."  *Id.* at \*16; *see also* RJN, Exhibit E.  Accordingly, the "search" here is reasonable and there is no plausible basis to establish that the mandate violates Plaintiffs' Fourth Amendment rights.

### 2.    There Is No Violation of Plaintiffs' Right to Privacy Under the California Constitution

In Count 2, Plaintiffs allege: (1) requiring them to report their vaccination status violates their privacy rights under Article 1, Section 1 of the California Constitution; and (2) requiring vaccination violates their privacy rights under the same provision.  FAC ¶¶ 98-103.  Both arguments fail because Plaintiffs' privacy rights are not violated, and even

if they were, such alleged rights are outweighed by the City's compelling interest in preventing the spread of COVID-19.

To allege an invasion of privacy in violation of the California Constitution, a plaintiff must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th 1, 37 (1994). While medical history and information is protected by a right to privacy, the right is not absolute. *Love v. State Dept. of Education,* 29 Cal.App.5th 980, 984 (2018). It "must be balanced against other important interests" and "may be outweighed by supervening public concerns." *Hill,* 7 Cal.4th 1 at 37. "[I]t is a conditional right which may be infringed upon a showing of a proper governmental interest." *Endy v. City of Los Angeles,* 975 F.3d 757, 768 (9th Cir. 2020) (rejecting a claim that informational privacy was violated where plaintiff provided "no evidence that his information has been publicly disseminated or disclosed"); *In re Crawford,* 194 F.3d 954, 959 (9th Cir. 1999).

### a. Disclosure of Vaccination Status Is Not a Violation of Privacy Rights

Where a challenged action primarily concerns health and safety, no fundamental right to privacy is at stake. *Wilson v. California Health Facilities Com.,* 110 Cal.App.3d 317, 322 (1980). "In the area of health and health care legislation, there is a presumption both of constitutional validity and that no violation of privacy has occurred." *Coshow v. City of Escondido,* 132 Cal.App.4th 687, 712 (2005).

Here, the Division of Occupational Health (Cal-OSHA), the government agency overseeing and enforcing workplace safety rules in the State of California, requires employers to obtain the vaccination status of their employees to comply with workplace safety protocols. Cal-OSHA's Emergency Temporary Standards (ETS) prescribe different protocols and exclusion requirements for fully vaccinated and non-fully vaccinated employees. For example, the ETS require employers to ascertain the vaccination status of employees to determine: (1) which employees may work indoors without a mask; (2) which employees must be tested based on a "close contact;" (3) which

employees must be provided with face coverings; and (4) which employees must be excluded from the workplace based on a close contact.  8 CCR §3205 (c)(3)(B); 8 CCR §3205 (c)(6); 8 CCR §3205 (7)(D)(8) and (9).  Cal-OSHA conducts on-site visits to ensure employers document employees' vaccination status and apply appropriate protocols for fully vaccinated and non-fully vaccinated employees.  Failure to follow Cal-OSHA rules and regulations results in citations and significant monetary penalties against the employer.  8 CCR §336.  As an employer, the City must comply with the ETS.  To the extent Plaintiffs seek to challenge the vaccination status disclosure requirement, they have sued the wrong defendant.

Similarly, the Equal Employment Opportunity Commission (EEOC) has advised that "Federal EEO laws do not prevent an employer from requiring all employees physically entering the workplace to be vaccinated for COVID-19, so long as employers comply with the reasonable accommodation provisions of the ADA and Title VII of the Civil Rights Act of 1964 and other EEO considerations."  In doing so, employers may ask employees whether they obtained the vaccine from a third party (pharmacy, personal doctor, etc.), and may ask for documentation or other confirmation of the vaccination from these sources.  *See* https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technical-assistance.  Thus, the City's efforts to comply with federal and state legal mandates by obtaining its employees' vaccination status do not violate Plaintiffs' privacy rights.

Furthermore, police officers and other public employees have no reasonable expectation of privacy as to their vaccination status because they may routinely be required to exchange confidential information as a part of their job duties, including regarding their salaries, qualifications, fitness status, hearing, physical examinations, drug testing, etc. Indeed, all City employees may be required to assist and interact with the public at any given time, including as part of the Disaster Service Workers program requiring all City employees to be available during an emergency. (*See* Government Code 3100).  In *Hill,* student athletes alleged that disclosing their medications and physical/medical conditions

9

violated their privacy rights.  In rejecting this argument, the California Court of Appeal held the plaintiffs had no right to participate in intercollegiate athletics and plaintiffs' reasonable expectation of privacy was diminished due to the nature of athletic competition which "presupposes a continuing exchange of otherwise confidential information" such as "illnesses, medical problems, and medications prescribed or taken." *Hill,* 7 Cal.4th at 13, 52.  To ensure the safety of the public and comply with safety regulations, the City *must* ascertain employees' vaccination status.  Plaintiffs are unable to show the City's efforts to do so violates any right to privacy.

### b.  Mandatory Vaccinations Are Not A Violation of Privacy Rights

It is well settled that the United States Constitution allows compulsory vaccination. *Jacobson,* 197 U.S. at 39.  More recently, in *Love*, the plaintiffs alleged that mandating vaccination as a condition for enrolling in school, while eliminating an exemption based on personal beliefs, violated their substantive due process and privacy rights under the California Constitution.  The plaintiffs claimed the mandate: "(1) infringes on their rights to bodily autonomy and to refuse medical treatments; (2) conditions the right to attend school on giving up the right to bodily autonomy and to refuse medical treatments; and (3) negates their parental right to make decisions in the upbringing of their children." *Love,* 29 Cal.App.5th at 988.  In rejecting these arguments, the court noted the "State is well within its powers to condition school enrollment on vaccination" because "[i]t is well established that laws mandating vaccination of school-aged children promote a compelling government interest of ensuring health and safety by preventing the spread of contagious diseases." *Id*. at 989-990.  The court reasoned the plaintiffs' privacy right is not absolute and "'must be balanced against other important interests' and 'may be outweighed by supervening public concerns.'" *Love,* 29 Cal.App.5th at 993, quoting *Hill,* 7 Cal.4th at 37.

*Love* applies forcefully here, in addition to *Jacobson*.  Simply put, the City is well within its powers to condition employment on vaccination, which promotes the

compelling government interest of ensuring health and safety by preventing the spread of a highly contagious, and deadly disease.

### 3. There Is No Violation of Plaintiffs' Right To Due Process Under the Fourteenth Amendment

In Count 3, Plaintiffs incorrectly allege the Vaccine Mandate violates their fundamental Fourth Amendment right to bodily integrity and freedom from coerced medical treatment, and incorrectly assert the Vaccine Mandate violates the "unconstitutional conditions doctrine." FAC, ¶¶ 116, 118-120-122. Not so. Rather, the City's Vaccine Mandate is subject to the rational basis test and must be upheld because it is rationally related to the City's goal of protecting its workforce and the public it serves.

### a. The City's Vaccine Mandate Is Subject to Rational Basis Scrutiny

An extremely deferential standard of review is applicable to the exercise of governmental authority during a public health emergency. *Klaassen v. Trs. of Ind. Univ.,* 2021 U.S. Dist. LEXIS 133300, at *54; *Co. of Los Angeles Dept. of Public Health v Superior Court,* 61 Cal.App.5th 478, 487-488 (2021). Well-settled precedent of the United States Supreme Court establishes that a rational basis standard applies to the Vaccine Mandate. The *Jacobson* Court held "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson*, 197 U.S. at 27. Though *Jacobson* was decided before the Supreme Court developed the modern framework for review (rational basis, intermediate, strict scrutiny), subsequent case law has discussed how, in reviewing mandatory vaccination requirements, the *Jacobson* Court "effectively endorsed—as a considered precursor—rational basis review of a government's [vaccination] mandate during a health crisis." *Klaassen,* 2021 U.S. Dist. LEXIS 133300, at *54. In addressing lawsuits filed seeking injunctive relief against local government responses to the COVID-19 public health emergency, district courts, appellate courts, and the Supreme Court have interpreted *Jacobson* as requiring deference to government officials responding to public health emergencies. *See Miura Corp. v. Davis,* 2020 U.S. Dist. LEXIS 165655, at *5 (C.D. Cal. 2020) (collecting cases);

11

1  *America's Frontline Doctors*, 2021 U.S. Dist. LEXIS 144477, at \*17; *Co. of Los Angeles*
2  *Dept. of Public Health v Superior Court*, 61 Cal.App.5th at 489.

3      The Vaccine Mandate must be analyzed under a rational basis standard because it
4  is a neutral policy of general applicability issued in response to a public health emergency.
5  Ordinance §§ 4.701 (a) and 4.705, (2).  The Vaccine Mandate does not target a suspect
6  class and does not implicate free exercise of religion, as shown by the religious exemption
7  offered.  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531
8  (1993) (refusing to apply strict scrutiny standard where challenged law was "neutral and
9  of general applicability.") (*See* RJN, Exhibit B, ¶ 8, Exhibit 3.)

10          **b.  The Vaccine Mandate Is Rationally Related to A Compelling Interest in**
11              **Stemming the Spread And Consequences of COVID-19 to Protect the**
12              **City's Workforce and the Community It Serves**

13      Under a rational basis review, "legislation is presumed to be valid and will be
14  sustained if the classification drawn by the statute is rationally related to a legitimate state
15  interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  "Rational
16  basis review is highly deferential to the government, allowing <u>any</u> conceivable rational
17  basis to suffice."  *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880
18  F.3d 450, 457 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018).  The City's COVID-19
19  vaccine mandate easily survives rational basis review.

20      First, the Vaccine Mandate, which provides for medical and religious exemptions,
21  is plainly directed at achieving the City's legitimate and compelling objective of reducing
22  the risk of contracting and spreading COVID-19 in the workplace, and by that workforce
23  to the public.  Ordinance §§ 4.701 (a) and 4.705, (2).  The Supreme Court has recognized
24  that "[s]temming the spread of COVID-19 is unquestionably a compelling interest."
25  *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020).

26      Second, the overwhelming evidence of the efficacy and safety of the available
27  COVID-19 vaccines establishes the Vaccine Mandate is rationally related to the City's
28  legitimate interests.  *See Klaassen*, 2021 U.S. Dist. LEXIS 133300, at \*67-104 (denying

a preliminary injunction seeking to enjoin Indiana University's COVID-19 vaccination requirement).  The three vaccines available in the United States were authorized after randomized controlled trials that were as large, or larger, than those undertaken for prior vaccines.  All three vaccines demonstrated their efficacy and safety.  The FDA and CDC continue to conduct extensive post-authorization safety and monitoring of those who receive the vaccines.  The evidence is overwhelming that COVID-19 vaccines are safe and effective in stemming the spread of COVID-9.  (*See* RJN, Exhibit F.)  This includes protection against the Delta variant, which has emerged as a highly contagious and more virulent version of the coronavirus that causes COVID-19, and has caused the latest surge of COVID-19 cases in California.  (*See* RJN, Exhibit G.)

Moreover, the data supports that vaccination has remained the single most effective strategy for preventing severe disease, hospitalization, and death from COVID-19.  (*See* RJN, Exhibit H.)  Indeed, the City is not the only governmental employer to implement a COVID-19 vaccination requirement to protect the health and safety of its workforce and the public during the pandemic.

Third, the City's decision not to exempt individuals who have previously had COVID-19 from its vaccination requirement is also rational in light of the currently available scientific evidence.  Plaintiffs challenge the Vaccine Mandate because it does not include an exemption for those who claim so-called "natural immunity" from having contracted, and recovered from, COVID-19.  FAC ¶30.  They seem to demand some type of prescreening as a form of exemption for previously infected individuals.  FAC ¶36.  However, a recent study from the CDC following the gathering of data from 187 hospitals across nine states concluded that "vaccine-induced immunity was more protective than infection-induced immunity against laboratory-confirmed COVID-19, including during a period of Delta variant predominance."  Accordingly, the study recommended "[a]ll eligible persons should be vaccinated against COVID-19 as soon as possible, including unvaccinated persons previously infected with SARS-CoV-2."  (*See* RJN, Exhibit E)

13

Finally, to the extent Plaintiffs dispute the scientific basis for the City's decisions by citing conflicting data (FAC ¶¶ 31-36, 39), this Court should not intervene "so long as [the City's] process is rational in trying to achieve public health." *Klaassen,* 2021 U.S. Dist. LEXIS 133300, at \*103-104. Moreover, while there is substantial scientific evidence supporting the efficacy of vaccines in preventing severe outcomes once an individual is exposed to the virus, no similar scientific support exists for the efficacy of antibody tests in detecting levels of immunity, let alone preventing severe outcomes for one who was previously infected. For example, the FDA cautions that antibody tests should not be used to evaluate a person's level of immunity or protection from COVID-19, as more research is needed to understand the meaning of positive or negative antibody tests. (*See* RJN, Exhibit I.) Accordingly, Plaintiffs do not state a viable Fourteenth Amendment claim.

### c.  The City's Vaccine Mandate Is Not an Unconstitutional Condition

Under the unconstitutional conditions doctrine, "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist*., 570 U.S. 595, 612 (2013). The doctrine protects constitutional rights "by preventing the government from coercing people into giving them up." *Id*. at 604. Plaintiffs assert the City is threatening to deny a benefit—continued City employment—because of an alleged constitutional right to refuse a vaccine.

The first step in an unconstitutional conditions doctrine claim is to "examine the validity of the underlying alleged constitutional rights." *Vance v. Barrett*, 345 F.3d 1083, 1088 (9th Cir. 2003). Here, the alleged Fourteenth Amendment liberty interest at stake is a City employee's right to refuse a vaccine at this stage in the COVID-19 pandemic. The Supreme Court recognizes a "constitutionally protected liberty interest in refusing unwanted medical treatment[.]" *Cruzan v. Dir., Missouri Dep't of Public Health*, 497 U.S. 261, 278 (1990); *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). "But, in these and in other cases, this liberty interest has remained confined by either duly enacted and constitutional state laws or the state's legitimate interests that it had rationally pursued in regulation." *Klaassen*, 2021 U.S. Dist. LEXIS 133300, at \*60 (listing cases); *see also*

*America's Frontline Doctors*, 2021 U.S. Dist. LEXIS 144477, at *13 (Plaintiffs made no showing the interest at issue—bodily autonomy or informed consent—was fundamental under the Constitution so as to require greater scrutiny.)

The Vaccine Mandate does not invade Plaintiffs' fundamental right to bodily integrity or to refuse unwanted medical treatment. The City is not forcing any City employee to receive a COVID-19 vaccine against their will. Instead, the City is presenting Plaintiffs and other City employees with a choice—get the vaccine, apply for an exemption or deferral, or face loss of City employment. In similar contexts, courts have rejected arguments that vaccine requirements are "coerc[ive]" or intrude on bodily integrity. *See, e.g.*, *Williams v. Santiago*, 2016 U.S. Dist. LEXIS 151491, at *7-9 (E.D. Cal. Nov. 1, 2016) (dismissing Due Process challenge premised on unjustified intrusions into the body because plaintiff alleged only that he was prescribed medical treatment he did not want and was able to refuse). The Vaccine Mandate permits Plaintiffs to choose whether or not to receive the vaccine. A hard choice does not amount to coercion. *See Klaassen*, 2021 U.S. Dist. LEXIS 133300, at *58-65 (rejecting claim that a public university's COVID-19 vaccination requirement as a condition of on-campus presence amounted to coercion).

Furthermore, neither the Supreme Court nor the Ninth Circuit has ever recognized a fundamental interest in public employment for substantive due process purposes. In fact, the Supreme Court has said its decisions "give no support to the proposition that a right of government employment *per se* is fundamental." Accordingly, "a standard of less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities.' [Citation]." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313 (1976); *see also Hanford Exec. Mgmt. Emle. Ass'n v. City of Hanford*, 2012 U.S. Dist. LEXIS 23161, at *42-45 (E.D. Cal. Feb. 22, 2021) (listing cases).

In short, Plaintiffs cannot show their alleged right to refuse a vaccine at this stage of the COVID-19 pandemic is a fundamental one. Thus, rational basis review applies.

This is consistent with the long-standing application of rational basis review to assess mandatory vaccination measures. *Klaassen*, 2021 U.S. Dist. LEXIS 133300, at *62. In applying rational basis, courts "merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Sagana v. Tenorio*, 384 F.3d at 731, 743 (9th Cir. 2004).

### 4. There Is No Violation of Plaintiffs' Right to Due Process Under 42 U.S.C. Section 1983

In Count 4, Plaintiffs allege a violation of due process under 42 U.S.C. § 1983, entirely premised on the erroneous assertion that all COVID-19 vaccines remain under Emergency Use Authorization (EUA). FAC ¶¶ 45-46, 136, 140, 142, citing Section 564 of the Food Drug and Cosmetic Act (FDCA), 21 U.S.C. § 360bbb-3(e)(1)(A)(ii). This claim is specious. In fact, this exact claim has been rejected by at least three different federal courts. *See, e.g., Valdez v. Grisham*, 2021 U.S. Dist. LEXIS 173680, at *11-15 (D. N.M. September 13, 2021); *Klaasen*, 2021 U.S. Dist. LEXIS at *63-65; *Bridges v. Houston Methodist Hosp.*, H-21-1774, 2021 WL 2399994, 2021 U.S. Dist. LEXIS 110382, at *5-6 (S.D. Tex. June 12, 2021).

First, despite Plaintiffs' protestations to the contrary, the FDA has now given full approval—not just EUA—to the Pfizer vaccine as administered to individuals 16 years of age and older. (*See* RJN, Exhibit J.) Accordingly, the provisions of the FDCA quoted by Plaintiff are not applicable to the administration of the Pfizer vaccine to individuals 16 years of age and older. *Valdez*, 2021 U.S. Dist. LEXIS, at *12.

Second, while these provisions may be applicable to non-Pfizer vaccines, "those provisions nowhere prevent the state, or any other entity, from requiring certain individuals to be vaccinated against COVID-19. Rather, in relevant part, the FDCA requires that, for medical products under an EUA, HHS must establish conditions to facilitate informed consent." *Id*. at *13 (quotation marks omitted). But this "informed consent requirement only applies to medical providers." *Id*. Here, since the City is not

directly administering the vaccine, the Ordinance "does not run afoul of [the FDCA]'s provisions." *Id.* at \*15; *see also Klaasen*, 2021 U.S. Dist. LEXIS, at \*63-65.

### 5. There Is No Religious Discrimination Under Title VII and FEHA

In Counts 5 and 6, Plaintiffs allege unsupported causes of action for religious discrimination under Title VII and FEHA and challenge the legality of the City's process for requesting a religious exemption from the Vaccine Mandate. Plaintiffs argue the City's exemption forms ask unlawful questions, and impermissibly require the employee to obtain third-party verification of whether the employee has a sincerely held religious belief and is actually a member of a religious system. FAC ¶¶ 157, 158, 173, 174.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 20003-(2)(a)(1). FEHA prohibits an employer from discriminating against an employee "because of [the employee's] ... religious creed." Cal. Gov. Code § 12940 (a). The analysis of a religious discrimination claim is the same under FEHA and Title VII. *Madsen v. Associated Chino Teachers,* 317 F. Supp. 2d 1175, 1180 (C.D. Cal. 2004).

### a. Plaintiffs Are Unable to Plead a *Prima Facie* Case of Discrimination

To establish a *prima facie* case of religious discrimination on the basis of a failure to accommodate theory, a plaintiff must show: (1) the plaintiff had a bona fide religious belief, the practice of which conflicts with employment duties; (2) the plaintiff informed the employer of the beliefs and conflict; and (3) the employer threatened or subjected Plaintiff with discriminatory treatment, such as discharge, because of inability to fulfill the job requirements. *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002); *Heller v. EBB Auto Co*., 8 F.3d 1433, 1438 (9th Cir. 1993).

Here, Plaintiffs must show they: (1) hold sincere religious beliefs in conflict with the COVID-19 vaccination requirement; (2) informed Defendants of the conflict by filling out a religious exemption form; and (3) were subjected to or threatened with discriminatory treatment due to their inability to fulfill the job requirement. Once a *prima*

*facie* case is established, the burden of proof shifts to the employer to "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Heller,* 8 F.3d at 1438. But in the absence of a *prima facie* case, a claim for failure to provide religious accommodation must fail.

Plaintiffs cannot establish a *prima facie* case of religious discrimination because they do not allege that any of them have been denied a religious exemption to the COVID-19 vaccination requirement. That is because their requests have not been denied. (*See* RJN, Exhibit B, ¶ 11.) Indeed, as Plaintiffs concede, all thirteen Plaintiffs have submitted a Notice of Intent to request a religious exemption, and all are pending review upon receipt of Plaintiffs' completed exemption request paperwork. FAC ¶ 53, Ex. 3. Accordingly, Plaintiffs are unable to establish the third element of a *prima facie* case, which requires discharge or other adverse employment action by the employer.[4] *See, e.g.*, *Beckerich*, 2021 U.S. Dist. LEXIS 183757, at *14 ("Because none of the Plaintiffs in this case have been denied a religious exemption, they are unlikely to establish the third element [for a Title VII claim], which requires discharge or discipline from their employer."). Furthermore, the City has continued to accept Notices of Intent to request an exemption submitted by employees. (*See* RJN, Exhibit B, ¶ 4.) Therefore, Plaintiffs cannot show, and do not claim, any of their Notices of Intent have been refused or rejected by the City.

### b. Plaintiffs Lack Standing for Their Title VII and FEHA Claims

Plaintiffs' FAC confirms they were not denied religious accommodation, nor threatened with or subjected to mistreatment due to their religious beliefs. Because Plaintiffs have suffered no harm, they lack standing – individually and collectively – to pursue these claims. *Friends of the Earth v Laidlaw Envtl. Services,* 528 U.S. 167, 180-

---

[4] As the Court has already held, the City has continued to accept Notices of Intent to request an exemption submitted by employees after the extended September 13, 2021 deadline. (*See* RJN, Exhibit B, ¶ 4.) Plaintiffs cannot show any Notices of Intent have been refused or rejected by the City.

181 (2000).  Accordingly, and based on their inability to state a *prima facie* case, Plaintiffs fail to state a claim for religious discrimination.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' entire action be dismissed without leave to amend.

Dated:  November 9, 2021          Respectfully submitted,

MICHAEL N. FEUER, City Attorney
VIVIENNE A. SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS**, Deputy City Attorney
**JENNIFER GREGG**, Deputy City Attorney
**TRAVIS T. HALL**, Deputy City Attorney

By*:      /s/ Erika Johnson-Brooks*
            **ERIKA JOHNSON-BROOKS**
               Deputy City Attorney

Attorneys for Defendant Eric Garcetti, Mayor of City of Los Angeles; Michel Moore, Chief of the Los Angeles Police Department; Matthew Szabo, Los Angeles City Administrative Officer