MICHAEL N. FEUER, City Attorney
VIVIENNE A. SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS**, Deputy City Attorney (SBN 210908)
**JENNIFER GREGG**, Deputy City Attorney (SBN 193037)
**TRAVIS T. HALL**, Deputy City Attorney (SBN 301755)
200 North Main Street, 800 City Hall East
Los Angeles, California 90012-4131
Telephone:  (213) 978-7156 / (213) 978-7153 / (213) 978-7151
E-mail:     Erika.Johnsonbrooks@lacity.org; jennifer.gregg@lacity.org
            Travis.t.Hall@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES,
ERIC GARCETTI, MICHEL MOORE, AND MATTHEW SZABO

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LEMONS, RODGINALD CAYETTE, MICHAEL PUNO, SUSANA REYNOSO, ANA FUENTES, MICHAEL PARKS, EVLIN AKSERELIAN, MATTHEW GONZALEZ, PATRICIA GONZALEZ, LAURISSA PROVOST, SUSAN GARCIA, CHRISTOPHER SILVA, GEORGINA GRIEGO<br><br>Plaintiff,<br>vs.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, Mayor of City of Los Angeles; MICHAEL MOORE, Chief of the Los Angeles Police Department; MATTHEW SZABO, Los Angeles City Administrative Officer, and DOES 1-50, Inclusive;<br><br>Defendants. | **CASE NO. 2:21-cv-07296-RGK-JPR**<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6))**<br><br>Hearing Date:  December 13, 2021<br>Time:          9:00 a.m.<br>Place:         Courtroom 850, 8th Floor<br><br>Honorable R. Gary Klausner<br>United States District Judge |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs clearly wish to ignore the fact that we are in a global pandemic. Rather than address the controlling case law and regulations for each of their claims, Plaintiffs instead use their Opposition to Defendants' Motion to Dismiss to pursue a pattern of citing to inapposite cases involving circumstances far different from the reality we face.

First, Plaintiffs willfully ignore any discussion of the factors considered by the Court in a Fourth Amendment "special needs" analysis. Plaintiffs do not provide any evidence to dispute the fact that the character of the intrusion is low since Plaintiffs are not being "forced" to receive an injection and can find new employment if they do not wish to comply, Nor do Plaintiffs dispute the government concern is overwhelming given the possibility of serious illness or death from contracting COVID-19. Instead, Plaintiffs cite to cases involving random drug testing in pre-pandemic times, arguing the City should tailor its vaccine and testing requirements to only those employees most at risk. Plaintiffs are seemingly unaware that COVID-19 does not discriminate in whom it affects.

Next, in regard to their privacy claims, Plaintiffs ignore the Cal-OSHA Emergency Temporary Standards (ETS) clearly stating that employers are *required* to obtain the vaccination status of their employees to comply with workplace safety protocols under its ETS. Consistent with this theme, Plaintiffs then dismiss precedent on this very issue—*Love v. State Dept. of Education,* 29 Cal. App. 5th 980, 984 (2018) — where the court specifically held that laws mandating vaccination promote a compelling government interest of ensuring health and safety.

Third, Plaintiffs incorrectly argue that strict scrutiny should apply in analyzing their due process violation claims because their fundamental right to refuse medical treatment is at issue. Yet, Plaintiffs ignore the overwhelming breadth of case law in which courts have uniformly deemed *Jacobson* controlling, rejected claims of a fundamental right to refuse a vaccine, and applied a rational basis standard of review.

Finally, in alleging a claim of religious discrimination, Plaintiffs ignore the fact that

none of them have been denied a religious exemption to the COVID-19 vaccination requirement. Furthermore, the Ordinance provision limiting promotions and transfers for employees who are not fully vaccinated for COVID-19 and have not received an exemption is expressly stated to be implemented only subject to completion of the bargaining process with affected City unions. These facts prove fatal to any *prima facie* case of discrimination Plaintiffs hope to make.

As such, Plaintiffs' claims do not have a plausible chance of success, and their First Amended Complaint should be dismissed in its entirety without leave to amend.

## II.   PLAINTIFFS' CLAIMS HAVE NO PLAUSIBLE CHANCE OF SUCCESS

As set forth in Defendants' Motion to Dismiss, Plaintiffs' factual allegations in the FAC do not suggest that their claims have a plausible chance of success, and therefore, should be dismissed pursuant to Rule 12(b)(6). *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1107 (9th Cir. 2013); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1.   There Is No Violation of Plaintiffs' Fourth Amendment Rights

Plaintiffs allege in Count 1 that the Vaccine Mandate is a compelled intrusion that violates their Fourth Amendment rights. In discussing the proper standard under which courts analyze allegedly intrusive medical examinations and tests in relation to Fourth Amendment rights, Plaintiffs dismiss *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995), arguing the case is inapposite because it dealt with different considerations. Yet, the "special needs" balancing analysis discussed by the Court in *Vernonia*, designed to control situations where a warrant requirement is impracticable, controls alleged searches such as the one here where special needs are present – namely, the need to swiftly combat a deadly pandemic. *Id.*; *see also Yin v. State of California,* 95 F.3d 864, 869 (9th Cir. 1996). Specifically, "special needs" analysis requires the court to consider: (1) the nature of the privacy interest affected; (2) the character of the intrusion; (3) the nature and immediacy of the government concern; and (4) the efficacy of this means of addressing the concern. *Vernonia*, 515 U.S. at 654-64.

As Defendants set forth in its moving papers, each factor clearly cuts in favor of the City. Most notably, the government intrusion is low, as the City is not acting as a medical provider and physically injecting Plaintiffs with the vaccine, and the nature and immediacy of the government concern is overwhelming, as the City continues to combat a virus that is continuously mutating with the ability to cause serious illness and death. Rather than provide any discussion about these factors, Plaintiffs ignore the "special needs" analysis and instead rely on such cases as *Skinner v. Ry Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989) and *Nat'l Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989) which are far different from the circumstances here.

Neither *Skinner* nor *Von Raab* involved a "search" designed to address a global pandemic with a deadly virus capable of infecting every member of the public. Instead, these cases involved normal drug testing of employees unrelated to any exigent circumstances. However, the Court's conclusion that the searches were only valid when targeted at employees in certain categories was consistent with special needs analysis. In *Skinner*, the targets of the proposed drug testing were railway employees in safety-sensitive positions. *Skinner,* 489 U.S. at 608-609. Given the heightened concern in deterring serious accidents and protecting the safety of the public by monitoring the sobriety of employees who "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences based on the interest of the general public," testing of this group of employees without a warrant was permissible. *Id.* at 628.

Here, although there is a similar concern with protecting the safety of the public, unlike *Skinner*, the government concern justifying the warrantless search is not limited to a particular subset of City employees. Rather, the City's Vaccine Mandate must account for the fact that the virus does not discriminate against whom may be infected, especially when individuals are unvaccinated. Accordingly, the City does not have the ability to accurately identify only those employees deemed to be "at risk," or conduct an "individualized suspicion of wrongdoing" as Plaintiffs propose, as the government entities

in *Skinner* and *Von Raab* could. The science is clear that individuals who have contracted the virus may be asymptomatic, which is why rigorous testing is needed. As such, the City <u>must</u> be able to conduct targeted testing of all unvaccinated employees who have been granted a religious or medical exemption under the terms of the Ordinance and have received the opportunity to test as a form of accommodation. This testing allows the City to accurately account for all potentially infected employees and take necessary measures to further protect the health and safety of its employees, as well as the general public.

Furthermore, Plaintiffs cite to Fourth Amendment search cases analyzed within the context of law enforcement seeking to discover evidence of criminal wrongdoing. (Opp. at pp. 14-15). Plaintiffs use these cases as a red herring to distract from the fact that a far different standard of Fourth Amendment analysis applies to law enforcement search cases—where reasonableness generally requires the obtaining of a judicial warrant—than what applies to the circumstances here where "special needs" are present. *Vernonia*, 515 U.S. at 653.

Accordingly, the City's "search" here is reasonable and there is no plausible basis to establish that the mandate violates Plaintiffs' Fourth Amendment rights.

### 2. Plaintiffs Cannot Establish a Right to Privacy under the California Constitution

In Count 2, Plaintiffs allege: (1) disclosure of their vaccination status violates their privacy rights under Article 1, Section 1 of the California Constitution; and (2) compulsory vaccination violates their privacy rights under the same provision. Yet, in their Opposition, Plaintiffs ignore the regulations and precedent establishing why these claims necessarily fail.

#### a. Disclosure of Vaccination Status Is Not a Violation of Privacy Rights

As an overall matter, Plaintiffs have sued the wrong defendant. In its Opposition, Plaintiffs make no mention whatsoever of the City's mandatory Cal-OSHA obligations. As set forth in detail in Defendants' Motion, Cal-OSHA *requires* employers to obtain the vaccination status of their employees to comply with workplace safety protocols under its

Emergency Temporary Standards (ETS).  *See* 8 CCR §3205 (c)(3)(B); 8 CCR §3205 (c)(6); 8 CCR §3205 (7)(D)(8) and (9)(requiring employers to ascertain the vaccination status of employees to determine: (1) which employees may work indoors without a mask; (2) which employees must be tested based on a "close contact;" (3) which employees must be provided with face coverings; and (4) which employees must be excluded from the workplace based on a close contact.)  Failure to follow Cal-OSHA rules and regulations results in citations and significant monetary penalties against the employer.  8 CCR §336. Therefore, if Plaintiffs wish to challenge the vaccination status disclosure requirement, they are free to pursue legal action against Cal-OSHA.

In addition to the above, police officers and other public employees have no reasonable expectation of privacy as to their vaccination status because they may routinely be required to exchange confidential information as a part of their job duties, including regarding their salaries, qualifications, fitness status, hearing, physical examinations, drug testing, etc.  *See, e.g.*, *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th 1, 37 (1994) (to allege an invasion of privacy in violation of the California Constitution, a plaintiff must establish: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.")  Indeed, Plaintiffs' own MOU specifically addresses random drug testing.  *See* RJN, Exhibit, C, pp. 15-20; *see also Hill,* 7 Cal.4th at 13, 52 (student athletes' reasonable expectation of privacy was diminished due to the nature of athletic competition which "presupposes a continuing exchange of otherwise confidential information" such as "illnesses, medical problems, and medications prescribed or taken.")

Moreover, "[a] defendant may prevail in a state constitutional privacy case by negating any of the three elements . . . or by pleading or proving, as an affirmative defense, that the invasion of privacy is justified because it substantially furthers one or more countervailing interests. . . ." *Hill*, 7 Cal. 4th at 38.  In the instant case, the compelling and countervailing interest is ensuring health and safety of its employees and the general public by preventing the spread of COVID-19.

1  For these reasons, Plaintiffs are unable to establish a violation of privacy rights concerning the disclosure of their vaccination status.

### b. Mandatory Vaccinations Are Not A Violation of Privacy Rights

Plaintiffs' brief erroneously seeks to distinguish students' privacy rights from those of public employees in an effort to disregard the seminal *Love* case. (Opp., p. 19.) There is no such distinction.

It is well settled that the United States Constitution allows compulsory vaccination. *Jacobson v. Massachusetts*, 197 U.S. 11, 39 (1905); *Zucht v. King*, 260 U.S. 174, 176 (1922). Likewise, in *Love*, despite the plaintiffs' claim that mandating vaccination as a condition for enrolling in school violated their substantive due process and privacy rights under the California Constitution, the court held: "It is well established that laws mandating vaccination of school-aged children promote a compelling government interest of ensuring health and safety by preventing the spread of contagious diseases." *Id*. at 989-990. The court reasoned the plaintiffs' privacy right is not absolute and "'must be balanced against other important interests' and 'may be outweighed by supervening public concerns.'" *Love,* 29 Cal.App.5th at 993, quoting *Hill,* 7 Cal.4th at 37. Here, the City is well within its powers to condition employment on vaccination, which promotes the compelling government interest of ensuring health and safety by mitigating the spread of a highly contagious and deadly disease.

Additionally, Plaintiffs' reliance on *Loder v. City of Glendale*, 14 Cal. 4th 846, is misplaced. In *Loder*, the court found the drug testing of current employees violated the Fourth Amendment. *Id.* at 852. However, the *Loder* case is wholly irrelevant because it does not address the current circumstances of a persisting worldwide pandemic with multiple variants which continue to pose a threat to public safety. In these circumstances, case law makes clear that privacy rights are diminished where public health and safety are involved. As set forth in *Jacobson*, courts must defer to the policymaking role of the State or other governmental entity and judicial intervention would only be appropriate if the statute had "no real or substantial relation" to public health, morals, or safety despite its

purported purpose. *Jacobson*, 197 U.S. at 31; *see also Kheriaty v. Regents of the Univ. of Cal.*, 2021 U.S. Dist. LEXIS 196639, at *15-16. Furthermore, contrary to Plaintiffs' assertion, the City does not need a less restrictive alternative to further its interests. *Vernonia*, 515 U.S. at 663.

### 3. There Is No Violation of Plaintiffs' Due Process Rights

#### a. The City's Vaccine Mandate Is Subject to Rational Basis Scrutiny

In Counts 3 and 4, Plaintiffs incorrectly allege that the Vaccine Mandate violates their due process rights. First, Plaintiffs' argument that a strict scrutiny standard of analysis applies to the circumstances here runs in direct contradiction to clear legal precedent analyzing the legality of vaccine mandates under the current pandemic where deference has been given to government officials responding to a public health emergency. *Jacobson*, 197 U.S. at 11; *Klaassen v. Trs. of Ind. Univ.*, 2021 U.S. Dist. LEXIS 133300 (N.D. Ind. Jul. 18, 2021). Plaintiffs try to dismiss *Jacobson* and *Klaassen*, arguing that because a fundamental right is involved—Plaintiffs' right to refuse medical treatment—strict scrutiny applies. Plaintiffs' argument fails, as no fundamental right is at issue.

As discussed in *Smith v. Biden*, 2021 U.S. Dist. LEXIS 215437, at *18-19 (D. N.J. Nov. 8, 2021), "every court that has considered the constitutionality of a COVID-19 vaccine mandate by an employer has deemed *Jacobson* controlling, rejected claims of a fundamental right to refuse a vaccine, and applied a rational basis standard of review." *Id.*; *Norris v. Stanley*, 2021 U.S. Dist. LEXIS 198388, at *2-3 (W.D. Mich. Oct. 8, 2021); *Messina v. The College of N.J.*, 2021 U.S. Dist. LEXIS 198104, at *8-9 (D. N.J. Oct. 14, 2021); *Does 1-6 v. Mills*, 2021 U.S. Dist. LEXIS 197251, at *12-13 (D. Me. Oct. 13, 2021); *Mass. Corr. Officers Fed. Union v. Baker*, 2021 U.S. Dist. LEXIS 198905, at *6-7 (D. Mass. Oct. 15, 2021); *Williams v. Brown*, 2021 U.S. Dist. LEXIS 201423, at *8-9 (D. Or. Oct. 19, 2021). This case is no different.

First, the City is not forcing any employee to receive a COVID-19 vaccine or be tested against their will. The Vaccine Mandate permits Plaintiffs to choose whether or not to comply. If Plaintiffs wish to refuse the vaccine, or testing procedures, they are free

to find new employment. *See Bridges v. Houston Methodist Hosp.*, 2021 U.S. Dist. LEXIS 110382 (S.D. Tex. June 12, 2021).)

Moreover, neither the Supreme Court nor the Ninth Circuit has ever recognized a fundamental interest in public employment for substantive due process purposes. In fact, the Supreme Court has said its decisions "give no support to the proposition that a right of government employment per se is fundamental." Accordingly, "a standard of less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities.' [Citation]." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313 (1976); *see also Hanford Exec. Mgmt. Emle. Ass'n v. City of Hanford*, 2012 U.S. Dist. LEXIS 23161, at *42-45 (E.D. Cal. Feb. 22, 2021) (listing cases).

As no fundamental right is at issue, and the policy is one of general applicability in response to a public health emergency, the City urges the Court to follow the long-standing application of rational basis review to assess mandatory vaccine measures. *Klaassen*, 2021 U.S. Dist. LEXIS 133300, at *62.

### b. The Vaccine Mandate is Rational in Trying to Protect Public Health

As rational basis applies, the City's Vaccine Mandate is rationally related to trying to protect public health. Plaintiffs try to diminish the importance and effectiveness of the vaccine in preventing the contraction and spread of the virus, arguing that vaccinations do not provide any further protection than so-called "natural immunity." Plaintiffs' position ignores the CDC's most recent findings on this subject.

Specifically, the science is clear that protection from the vaccine far exceeds natural immunity. As set forth in Defendants' moving papers, a November 2021 study from the CDC revealed that "vaccine-induced immunity was more protective than infection-induced immunity against laboratory-confirmed COVID-19, including during a period of Delta variant predominance" by a factor of 5.49 times. Accordingly, it is unsurprising that the study made the specific recommendation that "[a]ll eligible persons should be vaccinated against COVID-19 as soon as possible, including unvaccinated persons previously infected with SARS-CoV-2." (*See* Request for Judicial Notice in Support of

Defendants' Motion to Dismiss, Exhibit E.)

However, regardless of the parties' dispute over the science around the effectiveness of the vaccine, the law is clear that courts do not intervene "so long as [the City's] process is rational in trying to achieve public health." *Klaassen*, 2021 U.S. Dist. LEXIS 133300, at *103-104. There can be no legitimate dispute that the City's vaccine mandate is rational in trying to achieve public health in the middle of a global pandemic. *See Kheriaty*, 2021 U.S. Dist. LEXIS 196639, at *3 (finding the University's reliance on CDC guidance and clinical trials that supported the effectiveness of the COVID vaccine to meet rational basis). Accordingly, the City's Vaccine Mandate survives a rational basis review and there is no violation of Plaintiffs' due process rights.

### 4. Plaintiffs Cannot Establish Religious Discrimination Under Title VII and FEHA

In Counts 5 and 6, Plaintiffs allege causes of action for religious discrimination under Title VII and FEHA. In their Opposition brief, and in an attempt to establish a *prima facie* case, Plaintiffs now claim to have been subjected to an adverse employment action because they have not been reasonably accommodated and may face a future consequence of not being promoted or transferred pursuant to Section 4.704 of the Ordinance. These arguments lack merit.

As set forth in Defendants' Motion, Plaintiffs cannot establish a *prima facie* case of religious discrimination because they do not allege that any of them have been denied a religious exemption to the COVID-19 vaccination requirement. In fact, none of their requests have been denied. (*See* RJN, Exhibit B, ¶ 11.) Indeed, as Plaintiffs concede, all thirteen Plaintiffs have submitted a Notice of Intent to request a religious exemption, and all are pending review upon receipt of Plaintiffs' completed exemption request paperwork. FAC ¶ 53, Ex. 3; *see, e.g.*, *Beckerich*, 2021 U.S. Dist. LEXIS 183757, at *14 ("Because none of the Plaintiffs in this case have been denied a religious exemption, they are unlikely to establish the third element [for a Title VII claim], which requires discharge or discipline from their employer.").

As for their argument regarding future promotions and transfers, although the Ordinance includes a section limiting promotions and transfers for employees who are not fully vaccinated for COVID-19 and have not received an exemption (Ordinance, § 4.704), the effectiveness of the section regarding promotions and transfers is expressly stated to be implemented only subject to completion of the bargaining process with affected City unions. *Id*. at § 4.704 (b). That has not yet occurred. That section, therefore, has not been implemented.

Finally, as to their argument that they have not been accommodated, in the absence of pleading a *prima facie* case, their claim for failure to provide religious accommodation must also fail.

Therefore, Plaintiffs cannot show, and do not claim, any of their Notices of Intent have been refused or rejected by the City. Accordingly, they cannot establish a *prima facie* case of religious discrimination.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' entire action be dismissed without leave to amend.

Dated: November 29, 2021     Respectfully submitted,

MICHAEL N. FEUER, City Attorney
VIVIENNE A. SWANIGAN, Assistant City Attorney
**ERIKA JOHNSON-BROOKS**, Deputy City Attorney
**JENNIFER GREGG**, Deputy City Attorney
**TRAVIS T. HALL**, Deputy City Attorney

By: */s/ Erika Johnson-Brooks*
   **ERIKA JOHNSON-BROOKS**
   Deputy City Attorney

Attorneys for Defendant Eric Garcetti, Mayor of City of Los Angeles; Michel Moore, Chief of the Los Angeles Police Department; Matthew Szabo, Los Angeles City Administrative Officer